# In United States District Court
### For the District of Delaware

UNITED STATES OF AMERICA

v.

JAMES L. CHEESEMAN,

           Defendant

Criminal Complaint

CASE NUMBER: 07- 149M

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about __August 5, 2007__ in the District of Delaware, Defendant JAMES L. CHEESEMAN:

did knowingly possess in and affecting interstate commerce a firearm and ammunition, while then an unlawful user of, and addicted to, a controlled substance, to wit, cocaine base; did knowingly distribute a controlled substance, to wit, cocaine base; and did knowingly and intentionally possess more than five grams of a mixture and substance containing a detectable amount of cocaine base;

in violation of Title ___18___ United States Code, Section(s) __922(g)(3) and 924(a)(2);__ and Title ___21___ United States Code, Section(s) __841(a)(1), (b)(1)(C), and 844.__

I further state that I am a(n) __Special Agent, ATF__ and that this complaint is based
                            Official Title
on the following facts:

See attached Affidavit

FILED
AUG 15 2007
U.S. DISTRICT COURT
DIS[TRICT OF DELAWARE]

Continued on the attached sheet and made a part hereof:   Yes

Diane M. Iardella
Special Agent, ATF

Sworn to before me and subscribed in my presence,

__August 13, 2007__ at           Wilmington, DE
Date                                             City and State

Honorable Mary Pat Thynge
United States Magistrate Judge
Name & Title of Judicial Officer               Signature of Judicial Officer

I, Diane M. Iardella, Special Agent, ATF, being duly sworn, depose and state that:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in Wilmington, Delaware. I have been a Special Agent with ATF for approximately nineteen years. I have been involved in the investigation of approximately 200 cases involving firearms violations. I have attended eight weeks of Criminal Investigator School and eight weeks of ATF New Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia.

2. As part of my duties, responsibilities and training, and in the course of my investigative experience, I have become familiar with the statutes, rules and regulations, policies and procedures, relating to the Bureau of Alcohol, Tobacco, Firearms and Explosives, including but not limited to the regulation and sales of firearms by Federally Licensed Firearms Dealers.

3. This affidavit is submitted in support of a criminal complaint relating to James L. Cheeseman. X-Ring Supply is a Federally Licensed Firearms Dealer. Its license is held by Mr. Cheeseman. As set forth below, on August 5, 2007, Mr. Cheeseman was stopped by law enforcement officers in the possession of a significant quantity of suspected crack cocaine. During the course of the stop, Mr. Cheeseman indicated to the officers that he has suffered from a drug addiction. Mr. Cheeseman's companion at the time of the stop further told the officers that he had purchased crack cocaine for her earlier that night, and that, at the time of the stop, she and Mr. Cheeseman were en route to his business. Title 18, United States Code, Section 922(g) prohibits persons who are unlawful users of, or addicted to, controlled substances from shipping, transporting, possessing or receiving in interstate commerce any firearm or ammunition. By virtue of his firearms license and ownership of X-Ring Supply, Mr. Cheeseman is believed to be in unlawful possession of over 700 firearms.

4. Based on my training and experience and participation in other ATF investigations involving Federally Licensed Firearms Dealers ("FFL"), I know that:

    a. Upon the filing of a proper application and payment of the prescribed fee, the Attorney General shall issue to a qualified applicant the appropriate license which shall entitle the licensee to transport, ship and receive firearms and ammunition covered by such license in interstate or foreign commerce during the period stated in the license.

    b. It is required for Federal Firearms Licensees, pursuant to Title 18 United States Code, Section 923, to maintain records of firearms inventories and sales in an Acquisition and Disposition Book;

    c. Federal Firearms Licensees are subject to an inspection of their inventory and records to ensure compliance with record keeping requirements. Licenses shall be kept posted and kept available for inspection on the premises covered by the license.

    d. Federal Firearms Licensee may maintain a personal collection of firearms.

5. A person who is an unlawful user of, or addicted to, any controlled substance is prohibited from possessing a firearm or ammunition, pursuant to 18 USC, Section 922(g)(3), which reads in part as follows:

> It shall be unlawful for any person....who is an unlawful user of or addicted to any controlled substance...to...ship or transport... or possess in or affecting commerce, a firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

6. X-Ring Supply is a business in Newark, Delaware, that sells, among other things, firearms and ammunition. On August 9, 2007, your affiant verified that X-Ring Supply is a Federally Licensed Firearms Dealer, FFL#8-51-003-01-8F-33097. The license is held in the name of James L. Cheeseman. The licensed premises is located at 2201 Ogletown Road, Newark, Delaware. In a letter dated July 12, 1994, Cheeseman advised ATF that he was relocating his business from 6 White Oak Drive, Middletown, Delaware 19709 to 2201 Ogletown Road, Newark, Delaware 19711 as of August 15, 1994. On numerous occasions (most recently in or about January 2007), your affiant has personally observed James Cheeseman in the store conducting sales of firearms and ammunition.

7. Cheeseman as a Federal Firearms Licensee has been instructed by members of ATF Industry Operations on legal compliance issues relating to the execution of required documents and records pertaining to the sales of firearms which include, but are not limited to, the Firearms Transaction Record (ATF F 4473) forms which are to be executed by a purchaser of a firearm – and reviewed by the firearms dealer – prior to each sale. ATF F 4473, question number 11e, asks the question "Are you an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance?" ATF F 4473 also contains "Important notice #4," which provides:

> Prohibited Persons: Generally, 18 USC, Section 922 prohibits the shipment, transportation, receipt, or possession in or affection commerce of a firearm by one who: ... is an unlawful user of, or addicted to, marijuana or any depressant, stimulant, or narcotic drug, or any other controlled substance....

Cheeseman would have reviewed this form each time that he completed a transaction. Accordingly, he would have been regularly reminded that he cannot possess or ship firearms if he is a user of, or addicted to, controlled substances.

8. Your affiant is aware that once his application is approved, an FFL holder such as Cheeseman will receive a paper license. The FFL is permitted to make copies of this license, which he can then submit to firearms wholesalers, manufacturers, and distributors. Your affiant is aware that once a wholesaler receives a copy of the FFL's license (along with some form of payment information), the license holder can simply call the wholesaler/manufacturer/distributor and order additional firearms.

9. Your affiant learned from an ATF Industry Operations Investigator that he conducted a compliance inspection at X-Ring Supply. The inspection began on December 5, 2006 and was completed on January 16, 2007. Your affiant confirmed from the investigator that James Cheeseman is the sole proprietor of the firearms business. Your affiant learned from an ATF Industry Operations Investigator that on an FFL application for license or application for license renewal, a sole proprietor can list individuals on an application as responsible persons. Your affiant confirmed that Cheeseman has no responsible persons except himself listed on his renewal application.

10. A full firearms inventory was conducted during the inspection, with a total of seven hundred four (704) firearms found in inventory. Your affiant's review of ATF inspection reports reveals that Cheeseman maintains a store inventory of approximately seven hundred firearms in his business at any given time, and that Cheeseman stores the FFL's entire firearms inventory at the licensed premises. On January 24, 2007, a closing conference was held with Cheeseman and an ATF Industry Operations Investigator who reviewed the Federal Firearms Regulations with Cheeseman. An "Acknowledgement of Federal Firearms Regulations" form was signed by Cheeseman at this time.

11. Your affiant learned from an ATF Industry Operations Investigator that Cheeseman maintains a personal collection of firearms that he keeps on the premises at X-Ring Supply. The following is a list of firearms known to ATF as of the date of the January 2007 inspection that Cheeseman acquired with his FFL and disposed of to his personal collection. Included with the firearm information is the date each firearm was acquired into the Federal Firearms Licensee inventory and that the date the firearm was disposed of to the personal collection.

| Manufacturer / Importer | Model | Serial Number | Type | Caliber | Date Acquired | Date Disposed to Personal Collection |
|---|---|---|---|---|---|---|
| Keltec | P3AT | H9452 | Pistol | .380 | 08/16/2005 | 08/23/2005 |
| Glock | 23 | CVM402US | Pistol | .40 | 03/17/2006 | 04/28/2006 |
| Randall | Service | RF0002162 | Pistol | .45 | 02/03/2003 | 02/03/2003 |
| Randall | A121 | RF04469C | Pistol | .45 | 02/03/2003 | 02/03/2003 |
| Walther | P22 | C0122 | Pistol | .22 | 03/30/2002 | 03/30/2002 |
| Keltec | P32 | 76765 | Pistol | .32 | 07/25/2002 | 08/13/2002 |
| Grendel | P-30 | 7860 | Pistol | .22 | 02/02/2001 | 02/02/2001 |
| Smith & Wesson | 64 | 7D17449 | Revolver | .38 | 03/05/2001 | 03/05/2001 |
| Smith & Wesson | 65 | 7D88892 | Revolver | .357 | 05/20/2001 | 05/23/2001 |
| Smith & Wesson | 681 | ABD7265 | Revolver | .357 | 05/20/2001 | 05/23/2001 |
| Ithaca | Mag 10 | 100018479 | Shotgun | 10 ga. | 01/26/2001 | 01/26/2001 |
| Knight Mfg. | Stoner SR15-M4 | KM10612 | Rifle | .223 | 09/30/2000 | 09/30/2000 |
| Erma Werk | KGP68A | 100978 | Pistol | .32 | 11/10/1999 | 01/10/2001 |
| Winchester | 1897 | E681122 | Shotgun | 12 ga. | 11/20/1999 | 11/23/1999 |
| Kimber | Ultra Elite | KUE0025 | Pistol | .45 | 07/23/1999 | 07/25/1999 |
| Ruger | 1022 | 138224 | Semi | .22 | 09/15/1999 | 09/25/1999 |
| Kimber | Classic K770 | K0012 | Rifle | .30-06 | 04/23/1999 | 05/01/1999 |

| Make | Model | Serial | Type | Caliber | Date | Date |
|---|---|---|---|---|---|---|
| Kimber | Classic K770 | K0005 | Rifle | .30-06 | 04/23/1999 | 05/01/1999 |
| Ruger | MK450 | 22270073 | Pistol | .22 | 06/03/1999 | 06/04/1999 |
| Ruger | MK450 | 22270074 | Pistol | .22 | 06/03/1999 | 06/04/1999 |
| Bushmaster | XM15E2S | XX0906 | Rifle | .223 | 06/08/1999 | 06/10/1999 |
| Colt | SP1 | 13954 | semi | .223 | 11/17/1998 | 11/24/1998 |
| Colt | SP1 | 13862 | Semi | .223 | 11/17/1998 | 11/24/1998 |
| Kimber | Elite Carry | KEC0684 | Semi | .45 | 12/11/1998 | 12/13/1998 |
| Smith & Wesson | 627 | PMA0080 | Revolver | .357 | 01/15/1999 | 01/16/1999 |
| Springfield Armory | BM-59 | 727 | Semi | .308 | 03/29/1999 | 03/29/1999 |
| Kimber | Elite Carry | KEC0718 | Semi | .45 | 10/06/1998 | 10/24/1998 |
| B West | AK475 | BWA2517 | Semi | 7.62x39 | 10/13/1998 | 10/15/1998 |
| High Standard | Victor Mod 107 | 2312991 | Semi | .22 | 05/01/1998 | 05/08/1998 |
| Smith & Wesson | 442 | BRP9038 | Revolver | .38 | 07/10/1998 | 07/15/1998 |
| Caspian | 1911A1 | 14977 | s-a | .38 super | 07/14/1990 | 07/17/1990 |
| Remington | XP-100 | B7518040 | bolt | 7mmBR | 07/18/1990 | 07/18/1990 |
| Randall | A311 | RF0002496C | sa | .45 | 09/21/1991 | 09/23/1991 |
| Walther | GSP | 62702 | sa | .22 | 10/27/1991 | 10/28/1991 |
| Colt | R6701 | CH001554 | sa | .223 | 11/01/1991 | 12/08/1992 |
| Caspian | 1911A1 | 17066 | sa | Frame only | 11/25/1991 | 02/21/1992 |
| Ruger | 10/22 | 234-06399 | sa | .22 | 08/07/1992 | 08/07/1992 |
| Randall | Raider | RF0002859C | sa | .45 | 10/11/1992 | 10/12/1992 |
| Colt | 1991 Compact | CP03888 | sa | .45 | 11/19/1992 | 11/20/1992 |
| Caspian Arms Ltd. | Hi Cap Kit 1911 | 00177H | sa | Receiver only | 03/16/1993 | 03/17/1993 |
| Norinco / Sile | 565-1 | 409998 | sa | 7.62x39 | 04/05/1993 | 04/06/1993 |
| Polytech | AKS223 | PF85-001133 | sa | .223 | 10/18/1993 | 10/18/1993 |
| Remington | 1187 | PC061333 | sa | 12 ga. | 10/22/1993 | 10/22/1993 |
| Ruger | 10/22 | 23683609 | sa | .22 | 01/23/1994 | 01/23/1994 |
| Glock | 22 | ATT967US | sa | .40 | 02/10/1994 | 02/10/1994 |
| Para Ordnance | P12 | RS4691 | sa | .45 | 05/05/1994 | 05/05/1994 |
| Randall | A131 Commando | RF00008161C | sa | .45 | 05/22/1994 | 05/23/1994 |
| Colt | Sporter Lt Wt | NL003798 | sa | 9mm | 06/21/1994 | 06/21/1994 |
| Springfield | M1 A | 82415 | Semi | .308 | 08/02/1994 | 08/02/1994 |
| Springfield ARL ORD | M1 Tanker Garand | 394914 | sa | .308 | 09/22/1994 | 10/01/1994 |
| Knight Stoner | SR 25 match | 24098 | sa | 7.62 | 10/24/1994 | 10/24/1995 |
| Smith & Wesson | 15-4 | 43456 | Revolver | .38 | 12/18/1994 | 12/20/1995 |
| Para Ordnance | P-16 | RF2354 | sa | .40 | 01/16/1995 | 02/06/1995 |
| Polytech | AKS-762 | 386 CF-10658 | sa | 7.62x39 | 04/08/1995 | 06/01/1995 |
| Para Ordnance | P14 | S3288 | Semi | Frame only | 08/21/1995 | 08/30/1995 |
| Mitchell Arms | GS45 | M951613 | Semi | .45 | 10/20/1995 | 10/31/1995 |
| Smith & Wesson | 34 | 25301 | Revolver | .22 | 12/20/1995 | 12/30/1995 |
| Revelation | 400 | PRE68 | Semi | 12 ga. | 11/26/1996 | 12/05/1997 |
| STI | G51-40 | EM1133 | Semi | .40 | 12/09/1996 | 12/12/1996 |
| Weatherby | Orion II | E015910 | o/u | 12 ga. | 12/13/1996 | 12/23/1996 |
| Polytech | AK47 | 8799 | Semi | 7.62x39 | 03/27/1997 | 03/29/1997 |
| Ruger | Mini 14 | 18252031 | Semi | .223 | 05/21/1997 | 05/24/1997 |
| Ruger | Mini 14 | 182-72062 | Semi | .223 | 07/18/1997 | 07/21/1997 |
| STI | KK51 | SAS2009 | Semi | Frame only | 07/25/1997 | 07/25/1997 |

| | | | | | | |
|---|---|---|---|---|---|---|
| STI | KK51 | SAS2032 | Semi | Frame only | 07/25/1997 | 07/25/1997 |
| Kimber | Target | K019826 | Semi | .45 | 12/12/1997 | 01/01/1998 |
| Sig Saur | 226 | U582396 | Semi | 9mm | 01/19/1998 | 12/01/2001 |
| Sig Saur | 226 | U582395 | Semi | 9mm | 01/19/1998 | 12/01/2001 |

12. Your affiant learned from police reports and speaking with the officers involved that on August 5, 2007, Cheeseman was arrested by members of Delaware State Police and Governor's Task Force and charged with Trafficking Cocaine, Maintaining a Vehicle for Keeping Controlled Substances, Possession of Drug Paraphernalia and Conspiracy 2nd Degree.

13. On or about August 5, 2007, at approximately 11:15 pm, State Police officers observed a vehicle in the parking lot of an Eckerd's store after normal business hours. The vehicle's driver side and passenger side doors were open and a male, later identified as Cheeseman, was observed walking around the vehicle waving his arms, appearing as if he was involved in a verbal confrontation.

14. At the same time a female, later identified as ███████████, was observed walking from behind the business tying her skirt closed. It was apparent to the officer that ███████ had just urinated behind the business. The officer approached Cheeseman and ███████. The officer asked for identification from Cheeseman and ███████. ███████ provided a ███ driver's license. Cheeseman stated that he was not in possession of a driver's license and provided the officer with a credit card with his name on it and the business name X-Ring Supply.

15. ███████ was taken into custody for lewdness and a search of her person and purse was conducted. Within ███████ purse, inside a box of Winston cigarettes, was a clear knotted bag containing a white rock like substance believed to be crack cocaine. Within the purse was her wallet which contained a glass tube, burnt at one end, which the officer identified as a "crack pipe," a device which is used for smoking crack cocaine. Also within the purse, at the bottom, was a loose white rock substance believed to be crack cocaine.

16. An officer, knowing Cheeseman to be affiliated with X-Ring Supply, then asked Cheeseman if he was in possession of any weapons. Cheeseman advised no and gave verbal consent to the officer to conduct a pat down search of his person. The officer felt a glass tube in Cheeseman's left front pocket, and, based on the officer's training and experience, knew same to be a crack pipe. Cheeseman was taken into custody at the scene and the item was confirmed to be a crack pipe. This crack pipe also was burnt at one end, suggesting that it had been used.

17. A subsequent search of Cheeseman's person uncovered in Cheeseman's shirt pocket a box of cigarettes. Within the box of cigarettes were three clear plastic bags containing a white rock like substance believed to be crack cocaine. A search of the vehicle was conducted at the scene and an additional crack pipe was found on the center console of the vehicle.

18. The officer weighed the suspected crack cocaine and determined that Cheeseman was in possession of 10.5 grams of suspected crack cocaine, and that ▮▮▮▮▮ was in possession of 4.2 grams of suspected crack cocaine. The suspected crack cocaine was field tested and produced a positive reading for cocaine.

19. State Police officers interviewed ▮▮▮▮▮ at DSP Troop 2. ▮▮▮▮▮ stated the following:

- Cheeseman is her boyfriend and earlier on this date they were in Rehoboth, DE where Cheeseman has a trailer.

- They traveled to New Castle County about an hour prior to being stopped.

- They were going to go to Cheeseman's business, and then were going to return to Rehoboth.

- The crack cocaine located in her purse was given to her by Cheeseman.

- Shortly before being stopped, they met with an unknown subject who Cheeseman had called for the purpose of obtaining crack cocaine. ▮▮▮▮▮ stated that Cheeseman gave the drug dealer the money and the drug dealer gave Cheeseman the crack cocaine.

- Cheeseman gave her the crack cocaine that the officers found in her cigarette box for her personal use.

- Upon obtaining the crack cocaine they each immediately used a quantity of it while seated inside the vehicle.

- They each have their own crack pipes with which they use to smoke crack cocaine. ▮▮▮▮▮ stated that they bought the crack cocaine for personal use because it enhances their sexual encounters.

20. Cheeseman declined to be interviewed, but made an unsolicited statement to the officers that he was trying to get help for his addiction and had just returned from rehab.

21. After Cheeseman and ▮▮▮▮▮ were arraigned at JP Court 11 they were allowed to make phone calls in an attempt to make bail. During this time Cheeseman and ▮▮▮▮▮ were freely speaking amongst themselves. Officers overheard Cheeseman state to ▮▮▮▮▮, I don't know why they are charging us like that, we both know it was for personal use.

22. Your affiant interviewed an experienced Drug Enforcement Administration Special Agent who confirmed, based on the agent's experience with street sources, defendants and DEA chemists, that crack cocaine is highly addictive. The DEA Special Agent also advised your affiant that 10 grams of crack cocaine is a substantial quantity if actually

6

intended for personal use, and that it is likely that a user who acquires such a quantity has a significant drug habit. The DEA agent indicated that this is particularly the case if the user had, in fact, just returned from rehab.

23. Your affiant is aware that X-Ring Supply has remained in business since Cheeseman was found in possession of crack cocaine on August 5, 2007. Indeed, your affiant is aware that X-Ring Supply conducted a background check on at least one potential purchaser on August 11, 2007. Your affiant believes that Cheeseman has not notified ATF of his felony arrest nor his addiction to crack cocaine, and has not surrendered his inventory or his FFL license to ATF.

24. Your affiant knows from her experience and training that the firearms referenced in this affidavit were not manufactured in the State of Delaware. Thus, these firearms possessed in the state of Delaware affect interstate commerce. Moreover, during the December 2006-January 2007 inspection, an ATF inspector determined that X-Ring obtains its firearms inventory from at least three wholesalers: Ellett Brothers (of South Carolina), RSR (of New York, Florida, Nevada, Texas, and Wisconsin), and Accusport (of Ohio, Pennsylvania, and Georgia). None of these wholesalers are located in the state of Delaware, and your affiant is not aware of any commercial firearms manufacturers that are located in the state of Delaware.

25. Based on the above facts, your affiant submits that there is probable cause to believe that James Cheeseman has violated, and continues to violate, 18 U.S.C. §§ 922(g)(3), 924(a)(2) by possessing and receiving in interstate commerce firearms and ammunition while being an unlawful user of, and addicted to, a controlled substance; 21 U.S.C. §§ 841(a)(1), (b)(1)(C), by distributing a controlled substance (cocaine base); and 21 U.S.C. § 844, by possessing more than 5 grams of a mixture and substance containing a detectable amount of cocaine base. Your affiant respectfully requests that the Court issue a Criminal Complaint charging these offenses.

Your Affiant, having signed this Affidavit under oath, as to all assertions and allegations contained herein, states that its contents are true and correct to the best of her knowledge, information and belief.

_____
Special Agent Diane M. Iardella
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before
me this __13__ day of August, 2007.

_____
Honorable Mary Pat Thynge
United States Magistrate Judge
District of Delaware