IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Cr.A. No. 07-124-SLR |
| | ) | |
| JAMES L. CHEESEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

MOTION TO ADMIT DEFENDANT TO BAIL PENDING SENTENCING

COMES NOW the defendant, above, by and through counsel, Joe
Hurley, who asks this Honorable Court to permit the defendant,
above, to be released on his own recognizance pending sentencing
in this case, and in support of such application, represents:

1.  The defendant has exhibited a lifetime of stability,
reliability and industriousness. [See Exhibit "A" attached
hereto.]

2.  Prior to his incarceration, the defendant experienced
declining health such that he will have to avail himself of
physicians and medical procedures that lessen any flight risk
that otherwise would be suggested.  [See Exhibit "B" attached
hereto.]

3.  The defendant has never been a dealer of illegal drugs
nor, for that matter, was he a chronic abuser of illegal drugs.
[See Exhibit "C".]

4.  Since the defendant's arrest, he has been exposed to
conditions which, at a very minimum, endanger his health and will
continue to endanger his health because of the medical
indifference of the prison authorities. [See Exhibit "D".]

WHEREFORE, the defendant requests to be admitted to release
pending sentencing.

Joe Hurley
1215 King Street
Wilmington, DE 19801

Dated:   January 23, 2008

## Jim's Personal and Work History

Jim was born in Delaware and attended DelCastle High
School. He graduated in 1976. He has been employed every single
day since then except for the onset of his current incarceration
and which began in August of 2007.

Jim began working during the summers, full time, when he
was 12 years of age. During the summer, and on Saturday
mornings, as early as age 12, he worked in a menial capacity with
a Newark agency. His summer employment was 40 hours per week.
In his senior year of high school, he began an internship program
with Sun Oil in Marcus Hook, Pennsylvania. His studies at
DelCastle were in technical maintenance work. He worked at the
Sun Refinery in two-week rotations where he would work two weeks,
attend classes two weeks, and then return to work and the cycle
would continue. He remained at Sun until September of 2006.

He was then employed by a company known as Standard
Chlorine and which was located in Delaware City. He remained
there for five years. His job included the repair of machinery
and equipment associated with the chemical industry. Workers
actually died on the job. His best friend almost lost his life
and, indeed, had his life saved, by the defendant who pulled him

Exhibit "A"

out of a pool of chlorine.

He acquired new employment in 1981 by beginning work at a company known as American Mirex. This company was also involved in the chemical industry. He remained in the employ of this business until 1990 while performing tasks similar to those noted above.

In 1990, he began working at Avon and worked there through March of 2005 in a continuous fashion. He began receiving disability benefits in March of 2005 due to his inability to be employed based upon medical and health circumstances.

In 1990, as an entrepreneur, he began a business which was a retail firearms and ammunition provider. He built the business up from the ground and made it the vibrant entity that it has become. At the time of the seizure of the inventory of the business, the combined, approximate, value of the inventory and his personal firearms collection approximated one-half million dollars.

Jim was married in 1978 and remained married until 2003. In 2003, he and his wife separated. [See exhibited entitled "Drug History" post]

Jim accumulated a personal firearms collection of approximately 70 weapons. He was a collector not only for pleasure, but for potential profit. It was his opinion that the

value of the firearms that he collected would be enhanced with the passage of time and represented his investment in the future.

As a direct result of the "nightmare" that Jim has experienced as a result of his arrest, Jim was forced to sell his business interest.  Jim's two sisters have purchased the business and, in doing so, have discharged an obligation to a lender in excess of $70,000 and which indebtedness was business-related.

Jim's Health

Jim's health was fairly unremarkable until the onset of the twenty-first century.  The maladies he experienced prior to his incarceration, during the last several years, are many:

1. As a direct result of a gall bladder operation, Jim experienced a hernia in his lower abdomen area.  It was surgically repaired.

2. Jim currently has a hernia located several inches above the waistline and on the right side of the stomach.  The wall of the stomach actually distends in such a fashion that it can be palpated and visualized. It requires surgical repair.

3. Jim was diagnosed with a condition known as Chronic Fatigue Syndrome.  The genesis of the condition was thought to be exposure to environmental irritants and which, no doubt, were related to his employment in the chemical industry.  The clinical symptoms were not only, as the name suggests, a fatigue factor that caused listlessness and tiredness, but also a muscular pain throughout the **musculoskeletal system**

Exhibit "B"

basically from shoulder to the tip of the toes.

4. Jim has suffered from edema which is bilateral and proceeds throughout his legs. The precise medical diagnosis is not available to counsel, but it is a condition which causes concern because of a diminution of the blood supply to the lower extremities. In the event of what would otherwise be minor injury to the legs, the prospects of infection and/or gangrene are substantially increased.

5. Jim has a history of having pre-cancerous lesions all over his body. Prior to his incarceration, he would be attended by a dermatologist approximately four times a year for examination and removal of the potentially dangerous lesions.

6. Jim has chronic pain in the cervical area of his back. Upon counsel's information and belief, given the symptoms related by Jim, and given the duration of the symptoms, he probably has a bulging or herniated cervical disc or discs.

## Drug History

Other than brief experimentation with marijuana usage more than 30 years ago, Jim had never entered into the world of illegal drug usage until 2003 or 2004.

In February of 2003, Jim and his wife of 25 years separated from one another. He was involved with another female in approximately 2004. That female "broke my heart".[1] At the time that his "heart was broken", Jim was experiencing deteriorating health and found himself face-to-face with depression. He met someone who introduced him to cocaine. Initially, he periodically used powder cocaine and which usage became more frequent and then daily. At some point, he was introduced to crack cocaine and for a period approximating two years was a daily user of that odious substance. That usage went unabated until he voluntarily entered a residential rehabilitation program, but his involvement was only 10 days. He relapsed and within months he was arrested.

For more than 10 years Jim had a permit from the State of Delaware allowing him to carry concealed a deadly weapon. In

Exhibit "C"

---

[1] Counsel does not pretend to depict Jim as a victim of the termination of his marriage since, admittedly, by his involvement with another woman, his behavior was a significant contributor to that loss.

fact, prior to his drug use, he exercised that right.
Recognizing the danger of mixing "guns and drugs", he voluntarily
stopped "carrying" the concealed deadly weapon.  Furthermore, he
allowed the license to expire in approximately 2006.  He could be
described as an "absentee owner" with regard to his active
participation in the firearms business.

Cheeseman                        Medical


Prescribed medication for depression in July of 2007.  They have
cut it in half over there, and it's not working.

He had an ear infection after incarceration and he says it was
not treated properly, and he believes there was a Hearing loss
that he wants to have checked.

He says he needs surgery for a hernia and apparently it is a
long-term problem, but he's put on 40 pounds so it is worse.

He has treated with a dermatologist and has to have lesions
removed.

He has a broken tooth and he's requested to see a dentist several
times, but nothing.

He needs to see a cardiologist and vascular surgeon because of
conditions that he had preceding this.

He has emphysema which is worsening and he finds himself out of
breath.  He has what looks like sleep apnea because he had a test
over a year ago.

He has a constant ringing in his right ear.

    He came down with the infection within a month of being
    there and he made several requests to see the doctor and he
    complained daily to the nurse.  He had a fever.  They gave
    him Tylenol.  It was approximately two weeks before he saw
    a doctor and it was about four or five days after that
    before he could start a course of antibiotics.

    Within about five to six weeks, he had lost all of his
    hearing in that ear and he experienced intense pain.

    With regard to the hearing loss, he has asked to see a
    doctor and has gotten nowhere.

He has frequent breakdowns of crying and thinks that their
treatment for depression is 23-1/2 hours a day lockdown.

Upon his arrival here, he was given a mattress with no pillow or
sheet.  During that period of time, he was basically in solitary
confinement except for daily shakedowns, and your meals are
passed through a slot on the door so you don't see anyone.

                              1             EXHIBIT "D"

When he was in that first couple of weeks, it would depend on the guard whether you could get out to have a shower. The shower had ice cold water and you were adjacent to the medical unit where people could watch you.

This was the "treatment" he got for depression.

Even in population where he is now there are strip searches and they do it in front of the other prisoners.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| V. | )    Cr.A.No. 07-124-SLR |
| | ) |
| JAMES L. CHEESEMAN, | ) |
| | ) |
| Defendant. | ) |

## O R D E R

The defendant's Motion to Admit Defendant to Bail Pending

Sentencing having been heard and considered,

ORDERED this _____ day of _____, 2008, A.D.,

that the defendant's Motion is granted.

_____
J.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Cr.A.No. 07-124-SLR |
| | ) | |
| JAMES L. CHEESEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

CERTIFICATE OF SERVICE OF
MOTION TO ADMIT DEFENDANT TO BAIL PENDING SENTENCING

I hereby certify that two copies of the foregoing Motion to

Admit Defendant to Bail Pending Sentencing were hand delivered to

the following person on January 24, 2008:

> Keith M. Rosen
> U.S. Attorney's Office
> Suite 700
> 1007 North Orange Street
> Wilmington, DE 19801

Joe Hurley
1215 King Street
Wilmington, DE 19801

Dated:  January 23, 2008