**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

---

*Nemours Building*  
*1007 Orange Street, Suite 7100*  
*P.O. Box 2046*  
*Wilmington, Delaware 19899-2046*

*(302) 573-6277*  
*FAX (302) 573-6220*

August 6, 2008

Honorable Sue L. Robinson
United States District Court
J. Caleb Boggs Federal Building
844 King Street
Wilmington, Delaware 19801

 Re: **U.S. v. James L. Cheeseman**
   **Criminal Action No. 07-124-SLR**

Dear Judge Robinson:

  This letter is written in anticipation of the forfeiture hearing in the above-captioned case, scheduled for August 11, 2008. For the Court's convenience, this letter will set forth the government's position on the nature of the hearing that the Court should conduct, and will briefly outline the legal and factual issues that will be presented.

  In summary, the Court should take up two legal questions at the August 11 hearing: (a) the firearms listed in Count I of the Indictment are forfeitable under 18 U.S.C. § 924(d), and (b) whether the forfeiture of the weapons would constitute an excessive fine under the Eighth Amendment. See United States v. Bajakajian, 524 U.S. 321, 323 (1998) (criminal forfeiture limited by Excessive Fines Clause).[1] The government expects to demonstrate that all the weapons listed in the indictment are forfeitable under section 924(d), and that the forfeiture of those weapons would not violate the Eighth Amendment.

**I. Statement of the Case**

  On September 13, 2007, the defendant was indicted on one count of possession of a firearm by a prohibited person, 18 U.S.C. § 922(g)(3), one count of possession of more than five grams of crack cocaine, 21 U.S.C. § 844(a), and one count of distribution of cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(C). The section 922(g) charged alleged that the defendant was a prohibited person by virtue of his status as an unlawful drug addict, and specifically identified 609 firearms

---

  [1] While the Court is not required to hold a hearing on Eighth Amendment issues in every forfeiture case, and no such motion has been filed by the defense, counsel for the defendant has advised the government that the defendant will assert an Eighth Amendment claim in this matter.

and a quantity of ammunition that he illegally possessed. The indictment also contained a notice of forfeiture relating to the guns and ammunition.

The defendant owned and possessed the majority of these weapons by virtue of the fact that, at the time of the offense conduct, he was a federally licensed firearms dealer and the sole proprietor of a gun store known as "X-Ring Supply." The business was never incorporated, and the defendant operated the shop as a sole proprietorship pursuant to his firearms license. On August 14, 2007, federal agents executed a seizure warrant at X-Ring Supply, seizing the approximately 609 weapons and ammunition identified in the indictment.[2] The guns seized represented both the inventory of the store and the defendant's personal gun collection. It is the forfeiture of those weapons that is presently before the Court.

Following his indictment, the defendant sold the assets of his business to his sisters (Nancy Macknett and Pamela Rhoades), operating under the name X-Ring Supply, LLC. That sale was consummated in a purchase agreement dated December 16, 2007, for a total purchase price of $150,000. According to the purchase agreement, the defendant sold all of the assets of the business to his sisters – including, in relevant part, "all of the firearms, ammunition, and all other business related material now in the custody of the Federal government." Despite having sold his interests in the firearms to his sisters, the defendant also filed a claim for return of the seized items. Following the sale, on February 21, 2008, the defendant entered a plea to the section 922(g) charge pursuant to a Memorandum of Plea Agreement.

The defendant has been represented by Joe Hurley, Esquire. The defendant's sisters (and X-Ring Supply, LLC) have been represented in connection with the forfeiture by Charles Oberly, Esquire. It is the government's understanding that Mr. Oberly intends to represent the defendant as well with respect to the forfeiture issues in this case.[3]

## II.  Summary of Facts

The following facts are set forth in the Pre-Sentence Report, which the government expects will be uncontested at sentencing.

During the period alleged in the indictment, X-Ring Supply was a business in Newark, Delaware, that sold, among other things, firearms and ammunition. The defendant was the sole

---

[2] The government estimates that the firearms have a value of just over $371,500.

[3] Because the sisters/X-Ring Supply LLC acquired their interest in the property after the defendant was charged, and with full notice of the pending forfeiture/seizure, they do not have standing to independently pursue a claim under the federal forfeiture law. Based on undersigned counsel's conversations with Mr. Oberly, the government does not expect that the defendant's sisters will assert an independent claim before the Court.

proprietor and owner of X-Ring Supply, and was also the holder of the federal firearms license for X-Ring. The defendant had owned and operated the store from its current location in Newark, Delaware since on or about 1994. The store maintained an inventory of approximately 700 firearms at any given time, all of which was kept the premises. The defendant also maintained a personal collection of firearms that were kept on the premises at X-Ring Supply in August 2007.[4]

On or about August 5, 2007, at approximately 11:15 pm, Delaware State Police officers arrested the defendant and his female companion (Marie Henderson) in the parking lot of an Eckerd's store in New Castle County after normal business hours. Within Henderson's purse, was a clear knotted bag containing crack cocaine, a loose rock of crack cocaine, and a crack pipe.

A subsequent search of the defendant's person uncovered in his shirt pocket a box of cigarettes containing three clear plastic bags, inside of which was a quantity of crack cocaine, as well as a crack pipe which was burnt at one end, suggesting that it had been used. An additional crack pipe was found on the center console of the vehicle. The officer weighed the drugs and determined that the defendant was in possession of approximately 10.5 grams of crack cocaine, and that Henderson was in possession of approximately 4.2 grams of crack cocaine.

Ms. Henderson subsequently told police that the crack cocaine located in her purse was given to her by the defendant, and that both she and the defendant had used crack cocaine earlier that night. The defendant told the officers that he was trying to get help for his addiction and had just returned from rehab.

A federal search warrant was executed at X-Ring Supply on August 14, 2007. The searching agents seized the approximately 600 guns and ammunition that are listed in the indictment.[5] This includes a quantity of guns that were tagged as belonging to the defendant's personal collection.[6] As the sole proprietor and holder of the FFL, the defendant was the owner

---

[4]Prior to August 2007, the defendant generally kept his personal firearms at the home of his ex-wife, Patsy Cheeseman. In July 2007, Patsy Cheeseman insisted that the defendant remove his weapons from her home, which he did on or about July 28, 2007.

[5]With few exceptions, all of the firearms seized from the defendant's store were owned outright by the defendant. A small number of weapons were seized that investigators later determined were held by the defendant on consignment, or were otherwise still owned by a third-party. Those weapons have since been returned to their owners.

[6]According to an administrative review of the X-Ring records by ATF in January 2007, the defendant had transferred 68 guns from the store inventory to his personal collection. At the time of the search warrant in August 2007, only 42 of those weapons were found in the store.

(continued...)

Honorable Sue L. Robinson
August 6, 2008
Page 4

---

and possessor of this inventory. In a back warehouse room, which appeared to be used as a living space, agents also recovered (a) a crack pipe, (b) a mirror with cocaine residue, (c) a burnt spoon with cutting agent residue, (d) a "push rod" for filling a crack pipe, and (e) a digital scale hidden inside a VCR. The scale also appeared to have cocaine residue on its face.

Subsequent interviews with the defendant's family and co-workers have confirmed that the defendant entered a rehab center for 10 days in or about June 2007. The defendant's employees at X-Ring have all described behaviors by the defendant that are consistent with drug addiction. While none of them actually saw the defendant using drugs, at least three other crack pipes were found by the employees on the premises.[7]

Subsequent to his arrest, the defendant provided a hair sample, which was submitted for lab analysis. The results of the test indicated that the sample was positive for both cocaine and cocaine metabolites, confirming that the defendant was using cocaine over an extended period of time.

### III. Forfeitability Under Section 924(d)

Rule 32.2 (b)(1) and (b)(2) of the Federal Rules of Criminal Procedure, provide that:

> (1) As soon as practicable after entering a guilty verdict or accepting a plea of guilty or *nolo contendere* on any count in an indictment or information with regard to which criminal forfeiture is sought, the court shall determine what property is subject to forfeiture under the applicable statute. If forfeiture of specific property is sought, the court shall determine whether the government has established the requisite nexus between the property and the offense. . . . The court's determination may be based on evidence already in the record, including any written plea agreement or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt.
> (2) If the court finds that property is subject to forfeiture, it shall promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment or directing the forfeiture of specific property without

---

[6](...continued)
From 2003 through July 2007, the defendant's personal collection was stored at the home of his ex-wife. In July 2007, the defendant removed all his guns from his ex-wife's home. The remaining 26 guns identified as the defendant's in January 2007 remain unknown.

[7]The government expects to introduce testimony at the hearing to the effect that the defendant (and often his female companions) were essentially living out of the back room at X-Ring, and were using crack cocaine on the premises.

Honorable Sue L. Robinson
August 6, 2008
Page 5

---

> regard to any third party's interest in all or part of it. Determining whether
> a third party has such an interest shall be deferred until any third party files
> a claim in an ancillary proceeding under Rule 32.2(c).

The defendant has pled guilty to Count I of the indictment, charging him with possession of firearms and ammunition by an unlawful drug user or addict, 18 U.S.C. §§ 922(g)(3), 924(a)(2). Count I of the Indictment specifically lists 609 firearms, as well as a quantity of ammunition, as being involved in that offense. As part of his plea agreement, which this Court previously accepted, the defendant admitted that, from on or about August 5, 2007, through August 14, 2007: (a) he actually and constructively possessed the firearms and ammunition set forth in Count I of the indictment; (b) he was a regular unlawful user of, and addicted to, cocaine base; and (c) the firearms and ammunition at issue affected interstate commerce. See Memorandum of Plea Agreement at ¶3. The defendant did not concede the forfeiture of the weapons listed in Count I as part of his plea, and thus the forfeiture issue is presently before the Court.

Title 18, United States Code, Section 924(d) provides for the forfeiture of firearms involved in a 922(g) offense, which criminalizes the possession of firearms by a prohibited person.[8] This means that for a given firearm to be forfeitable under the statute as "involved in" the offense, the government need only show that the defendant possessed the weapon during the time charged. See, e.g., United States v. 13 Firearms and Ammunition, 2006 WL 1913360 at *2 (E.D. Ky. July 11, 2006) (unreported decision) (in 922(g)(3) case, government need only prove that drug addict defendant possessed the weapons at issue for those weapons to be forfeitable). Forfeiture is a part of the defendant's sentence; accordingly, the government's burden is to establish forfeitabililty in this instance by a preponderance of the evidence.[9]

After a defendant pleads guilty, the forfeiture phase of the case proceeds in two steps. First, the Court must determine the whether the property listed in Count I is forfeitable. See United States v. Pellulo, 178 F.3d 196, 202 (3d Cir. 1999). At this stage, the Court's role is to determine solely whether the government can establish the proper nexus between the property and the offense. United States v. Sokolow, 91 F.3d 396, 414-15 (3d Cir. 1996). If the property is forfeitable, the Court enters a Preliminary Order of Forfeiture. Second, the Court should conduct

---

[8]Section 924(d)(1) provides, in relevant part:
> Any firearm or ammunition involved in or used in any knowing violation
> of subsection . . . (g) . . . of section 922 . . . shall be subject to seizure and
> forfeiture.

18 U.S.C. §924(d)(1).

[9]See generally United States v. Voigt, 89 F.3d 1050, 1083 (3d Cir. 1996); United States v. Pellulo, 14 F.3d 881, 901-06 (3d Cir. 1996). The Third Circuit has imposed a more stringent burden in RICO cases, which is not applicable here. Id.

an ancillary proceeding to resolve the claims of any third parties who have standing to assert an interest in the property. Pellulo, supra.[10]

Although not conceded by the defendant as part of his plea agreement, the issue of forfeitability cannot be seriously contested here. All of the firearms at issue were identified as part of the offense alleged in Count I of the Indictment, and the defendant admitted possessing all of these weapons in paragraph 3 of his plea agreement. Moreover, the factual record set forth in the PSR (to which the defendant has not objected) establishes that the defendant both owned and possessed all the firearms and ammunition seized from X-Ring Supply in August 2007. Accordingly, while the government will be prepared to adduce additional facts to prove the 924(d) nexus between the firearms and the offense, the government respectfully submits that the Court should determine that all the firearms seized are forfeitable under the statute based on the record to date.

## IV. Eighth Amendment

Criminal forfeitures are limited by the Excessive Fines clause of the Eighth Amendment. Following the Supreme Court's decision in Bajakajian, supra, the test is whether the forfeiture is "grossly disproportional to the gravity of the offense." 524 U.S. at 323. To state the inverse, the amount of the forfeiture need only "bear some relation to the gravity of the offense;" the Constitution is only violated if the forfeiture is grossly disproportional. Id. at 334. Strict proportionality between the forfeiture and the offense is not required. Id. at 336.[11] The defendant carries the burden of proving that the forfeiture is grossly disproportional. See United States v. Ahmad, 213 F.3d 805, 808 n.1, 816 (4th Cir. 2000); see also 18 U.S.C. 938(g)(3) (burden in civil forfeiture matter on claimant).[12]

Importantly, Bajakajian makes clear that whether a forfeiture is "excessive" is determined by comparing the value of the property with the gravity of the offense – and not by comparing the

---

[10] The Preliminary Order of Forfeiture becomes final as to the defendant at the time he is sentenced; it only remains "preliminary" with respect to third parties whose claims remain unresolved. See United States v. Bennett, 423 F.3d 271, 275 (3d Cir. 2005). Accordingly, the forfeiture order must be included in the Court's oral pronouncement of sentence, as well as in the Judgement and Conviction Order.

[11] In Bajakajian, the government seized roughly $357,144 in cash that the defendant had willfully failed to report when attempting to leave the country. See 18 U.S.C. § 982(a)(1). The Court found that the forfeiture of the entire amount was grossly disproportionate to the offense, as the currency was not associated with any crime other than the failure to report it.

[12] As a procedural matter, the Court does not take up an Eighth Amendment claim until after it has determined the forfeitability of the property and entered the Preliminary Order of Forfeiture. See, e.g., United States v. Tedder, 2003 WL 23204849 at *6 (W.D. Wis. 2003).

amount of the forfeiture to the owners' personal assets. See 524 U.S. at 323; United States v. 817 N.E. 29th Drive, Wilton Manors, Florida, 175 F.3d 1304, 1311 (11th Cir. 1999). In other words, gross disproportionality is measured against the nature of the offense, not the nature of the offender. Wilton Manors, 175 F.3d at 1311.

Further, if the value of the forfeited property is within the range of fines prescribed by statute for the offense, a strong presumption arises that the forfeiture is constitutional. Wilton Manors, 175 F.3d at 1309-10. At the same time, the fact that a forfeiture exceeds the statutory fine does not mean that the forfeiture is presumptively unconstitutional. Id. at 1309 n.9. Only if the value of the forfeited property is far in excess of the statutory fine range is the forfeiture likely to violate the Eighth Amendment. Id.

Cases since Bajakajian have demonstrated the difficult burden borne by defendants seeking to demonstrate that a forfeiture is unconstitutional.[13] The Third Circuit has since applied Bajakajian in Yskamp v. DEA, 163 F.3d 767 (3d Cir. 1998). In that case, CIGNA Corp. insured a jet owned by defendant Yskamp, which Yskamp used to transport drugs. After DEA seized the plane, Yskamp filed a claim under his policy with CIGNA, which CIGNA paid, after which CIGNA became the outright owner of the jet. Id. at 769. CIGNA then claimed that the forfeiture of the jet was unconstitutional, noting that it had no duty to take precautions to prevent Yskamp's use of the plane for illegal cargo. The Third Circuit rejected CIGNA's argument, finding that the amount of cocaine at issue was relatively large, and that crediting CIGNA's claim would effectively insulate criminals from the loss consequences of their crimes. Id. at 773.

More instructive with respect to the instant case is the Fifth Circuit's decision in United States v. Wallace, 389 F.3d 483 (5th Cir. 2004). In Wallace, the defendant was convicted of operating an unregistered aircraft. He was sentenced to one year of probation. The sentencing judge also ordered forfeiture of his plane, which the defendant claimed was excessive under Bajakajian. The Fifth Circuit upheld the forfeiture, finding that the seizure of a $30,000 airplane was not grossly disproportionate as compared to the $250,000 maximum fine that could have been imposed for the offense. 389 F.3d at 486. Indeed, the court noted that even if the $15,000 maximum fine that existed under the predecessor statute of conviction had applied, the $30,000 forfeiture would still not have been grossly disproportionate. Id. The court observed that the value of the plane only differed from the $15,000 maximum fine by a factor of two – whereas the $357,000 forfeiture in Bajakajian was over seventy times the maximum fine of $5,000 that applied in that case. Id. at 487. Moreover, the court found that the defendant had owned the

---

[13]Prior to Bajakajian, the Third Circuit had already begun movement toward a proportionality test for forfeitures. In United States v. Sarbello, 985 F.2d 716, 724 (3d Cir. 1993), the court identified a list of factors to be applied in a RICO forfeiture case, including (a) the seriousness of the offense versus the severity of the sanction; (b) the personal benefit reaped by the defendant; (c) the defendant's motive and culpability; and (d) the extent to which the defendant's interest and the RICO enterprise are tainted by the defendant's conduct.

airplane for seven years without registering it – whereas in <u>Bajakajian</u>, the defendant committed a one-time transportation of currency offense. <u>Id.</u>

The forfeiture of the defendant's firearms, measured against <u>Bajakajian</u>, <u>Wallace</u>, and <u>Yskamp</u>, clearly is not "grossly disproportionate" to his conviction for possessing those very guns illegally. The seized weapons are valued at approximately $371,500. This is only marginally in excess of the maximum statutory fine of $250,000 applicable to the one count of possession of a firearm by a prohibited person to which the defendant pled. Moreover, as the Court is aware, each individual firearm could have been charged as a separate offense; the entire lot of firearms was consolidated into one count for purposes of efficiency.[14] Had the defendant pled to even two counts of 922(g)(3)– let alone 600 – the maximum statutory fine would have been $500,000. This is far in excess of the value of the forfeited property. Under <u>Wilton Manors</u>, therefore, since the value of the forfeited property is within the range of fines prescribed by statute for the offense, a strong presumption arises that the forfeiture is constitutional. <u>Wilton Manors</u>, 175 F.3d at1309-10.

The facts of the offense further support this conclusion. The defendant was a crack cocaine addict with a sizable drug habit.[15] He was living out of X-Ring Supply, using cocaine on the premises, and allowing his female companions (who were also drug users) to also live on the premises. As to his personal guns, the fact that the defendant chose to keep 42 weapons instead of one or two does not make the forfeiture of all those firearms unconstitutional. As to the store inventory, the defendant was the sole owner of the store and the federal licensee, thus he was personally responsible for purchasing and maintaining all the firearms on the premises during the period of his addiction. Much like the defendant in <u>Wallace</u>, the defendant engaged in an ongoing violation of federal law; unlike <u>Bajakajian</u>, this was not a one-time offense. Not only was the defendant's criminal conduct ongoing, but it created a substantial public safety risk. In that light, the forfeiture of the very weapons owned and possessed by the defendant during the period of the offense is not grossly disproportionate to the offense.

In sum, any Eighth Amendment argument in this case should fail. The defendant's possession of each individual firearm, as well as each unit of ammunition, violated section 922(g), and each item clearly could have been charged and forfeited separately without offending the Constitution. Charging all the items in one count did not make forfeiture of the entire lot more excessive than had they been forfeited one at a time. The fact that the defendant chose to

---

[14]Pleading to one count (instead of 609) benefitted the defendant as well, as it spared him from having to pay $60,800 in special assessments to the Court.

[15]The defendant was found in possession of approximately 10 grams of crack on the night of his arrest by State Police. The typical user dose of crack, by contrast is approximately .10 gram.

Honorable Sue L. Robinson
August 6, 2008
Page 9

---

illegally possess an entire store full of weapons, rather than just a few of them, does not make forfeiture of the entire collection an excessive penalty.

V.   **Even If Not Properly Forfeited, the Firearms Cannot be Returned to the Defendant**

As a result of his guilty plea, the defendant is now a convicted felon. Accordingly, he cannot possess firearms under federal law. If the Court determines that the forfeiture of the weapons in this case would be unconstitutional (in whole or in part), it cannot return the weapons to the defendant, as that would implicate the Court in a new violation of 18 U.S.C. § 922(g). Indeed, Title 18, United States Code, Section 983(a)(1)(F) provides that:

> The Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess.

Relying upon a combination of statutory law and equitable principles, several courts have refused to return firearms to convicted felon owners even if the government failed to obtain title to the property through forfeiture.[16] These courts, following Felici, have held that under section 922(g), a convicted felon who is prohibited from possessing firearms simply has no right to their return.[17] Accordingly, the Court should grant an order pursuant to the All Writs Act permitting the government to destroy any firearms that are not properly forfeited, as they cannot be returned to the defendant. See United States v. Felici, 208 F.3d 667, 670 (8th Cir. 2000); see also United States v. Smith, 142 Fed. Appx. 100 (3d Cir. July 29, 2005) (unreported decision) (following Felici).[18]

---

[16] See United States v. Felici, 208 F.3d 667, 669-70 (8th Cir. 2000); United States v. Howell, 425 F.3d 971, 975-77 (11th Cir. 2005); United States v. Smith, 142 Fed. Appx.100, 102 (3d Cir. 2005); United States v. Harvey, 78 Fed. Appx. 13, 14-15, 2003 WL 21949151 (9th Cir. 2003); United States v. Headley, 50 Fed. Appx. 266, 267, 2002 WL 31473476 (6th Cir. 2002); see also United States v. Rivas-Cristales, 88 Fed. Appx. 978, 979, 2004 WL 414816 (8th Cir.2004); United States v. Clenney, 25 F.3d 1041, 1994 WL 233296 (4th Cir. 1994); United States v. Taylor, 975 F.2d 402 (7th Cir. 1992).

[17] A number of these courts have gone further, holding that the defendant may not designate another person to receive the firearms, as that would be a prohibited exercise of constructive possession. See, e.g., United States v. Howell, 425 F.3d 971, 975-77 (11th Cir. 2005); United States v. Headley, 50 Fed. Appx. 266, 267 (6th Cir. 2002).

[18] In some respects, the defendant's claim here is largely an academic one. He cannot lawfully own, possess, or profit from the sale of the firearms, and whatever interest in them he retains was sold after the fact to X-Ring Supply, LLC.

Honorable Sue L. Robinson
August 6, 2008
Page 10

---

## VI. Conclusion

The government respectfully submits that the Court should conduct a hearing on the forfeitability of the weapons identified in Count I of the indictment, and find that those weapons are properly forfeited to the United States as a matter of statute and the Eighth Amendment. Upon making such a finding, the United States respectfully requests that this Court enter a Preliminary Order of Forfeiture forfeiting to the United States the property described in Count I, and order the government to seize and maintain custody of the forfeited property and dispose of it in accordance with the law.

A proposed Preliminary Order of Forfeiture is attached hereto.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By: _____
Keith M. Rosen
Assistant United States Attorney
Chief, Criminal Division


pc:   Charles Oberly, III, Esquire  (w/ Enc. - via Telefax)
      Joseph Hurley, Esquire  (w/ Enc. - via Telefax)
      Mr. Marti Durkin, USPO  (w/ Enc. - via Telefax)

Enclosure

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff | : |
| v. | : Criminal Action No. 07-124-SLR |
| JAMES L. CHEESEMAN, | : |
| Defendant. | : |

**PRELIMINARY ORDER OF FORFEITURE**

IT IS HEREBY ORDERED THAT:

As the result of the defendant's guilty plea to Count I of the Indictment, for which the Government sought forfeiture pursuant to 18 U.S.C. § 924(d)(1), defendant shall forfeit to the United States all firearms and ammunition involved in the offense alleged in Count I. The Court has determined, based on the evidence already in the record, the defendant's plea agreement, and the evidence presented at a post-trial hearing on the forfeiture allegation in the Indictment, that all the firearms and ammunition set forth in Count I of the Indictment are subject to forfeiture pursuant to section 924(d)(1), and that the government has established the requisite nexus between such property and the violation of Title 18, United States Code, Section 922(g)(3) that is the subject of Count I.

Upon entry of this Order, the United States is authorized to commence any applicable proceeding to comply with statutes governing third party rights, including giving notice of this Order. The United States shall publish notice of the order and its intent to dispose of the property in such a manner as the United States may direct. The United States may also, to the extent practicable, provide written notice to any person known to have an alleged interest in the

Subject Property.

Any person, other than the above named defendant, asserting a legal interest in the Subject Property may, within thirty days of the final publication of notice or receipt of notice, whichever is earlier, petition the court for a hearing without a jury to adjudicate the validity of his alleged interest in the Subject Property, and for an amendment of the order of forfeiture.

Pursuant to Fed. R. Crim. P. 32.2(b)(3), this Preliminary Order of Forfeiture shall become final as to the defendant at the time of sentencing and shall be made part of the sentence and included in the judgment. If no third party files a timely claim, this Order shall become the Final Order of Forfeiture, as provided by Fed. R. Crim. P. 32.2(c)(2).

Any petition filed by a third party asserting an interest in the Subject Property shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the Subject Property, the time and circumstances of the petitioner's acquisition of the right, title or interest in the Subject Property, any additional facts supporting the petitioner's claim and the relief sought.

The United States shall have clear title to the Subject Property following the Court's disposition of all third-party interests, or, if none, following the expiration of the period provided by statute for the filing of third party petitions.

The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Fed. R. Crim. P. 32.2(e).

3

The Clerk of the Court shall forward four certified copies of this order to the assigned Assistant U.S. Attorney.

IT IS SO ORDERED:

Dated:

_____
HONORABLE SUE L. ROBINSON
UNITED STATES DISTRICT JUDGE