Charles M. Oberly, III
Direct Dial: (302) 777-6925
Direct Fax: (302) 778-7905
E-mail:     coberly@wolfblock.com

August 29, 2008

The Honorable Sue L. Robinson
United States District Court of Delaware
844 North Kign Street
Wilmington, DE  19801

Re:    **U.S.A. v. James L. Cheeseman - Cr.A. No. 07-124-SLR**

Dear Judge Robinson:

At the conclusion of the hearing on the forfeiture sought by the United States on August 11, 2008, counsel for the Government requested an opportunity to respond to my letter to the Court dated August 8, 2008.  Your Honor agreed and counsel then agreed to submit simultaneous letters by August 29, 2008, which would also address the hearing testimony.

The legal issue before your Honor has been addressed in Mr. Cheeseman's letter to the Court dated August 8, 2008.  Mr. Cheeseman, through counsel, first contends that a forfeiture of the firearms in issue is not permissible in that the firearms were neither "involved in or used" in a knowing violation of the statute.  Because the case law and argument are fully addressed in the August 8, 2008 letter, counsel will not restate the argument.[1]

In determining either the applicability of the forfeiture statute to the facts of this case or whether the seizure of the firearms would be an excessive fine under the Eighth Amendment, the testimony elicited during the hearing is helpful.  It is submitted that the Government's case completely failed to link Mr. Cheeseman to any active involvement concerning his operation of X-Ring Supply.  While the evidence presented by the Government showed that Mr. Cheeseman may have spent nights either inside the main portion of the store or the warehouse and raises, by implication, that either he or a girlfriend used cocaine (the warehouse is where the Government's exhibits primarily focus upon the use of cocaine), there is no evidence of record that Mr. Cheeseman was actively engaged in the operational end of the business.  In fact, it is clear that

---

[1] The Government in its letter memorandum to the Court dated August 6, 2008, relies upon the "involved in" wording as justification for the seizure.  Shortly after the hearing, Mr. Rosen advised counsel that it would now raise the "used" wording in its response filed today (Exhibit 1, attached hereto).  Mr. Cheeseman's letter of August 8, 2008, addresses both the "involved in or used" wording.

WIL:126028.1/CHE210-831049

Boston, MA ■ Cherry Hill, NJ ■ Harrisburg, PA ■ New York, NY ■ Norristown, PA ■ Philadelphia, PA ■ Roseland, NJ ■ Wilmington, DE

WolfBlock Government Relations - Harrisburg, PA ■ WolfBlock Public Strategies - Boston, MA, New York, NY and Washington, DC

WolfBlock LLP, a Pennsylvania Limited Liability Partnership

The Honorable Sue L. Robinson
August 29, 2008
Page 2

Mr. Cheeseman's addiction to cocaine had rendered him unable to operate the business. His sister, Nancy Macknatt, the current owner of the business, actually operated the business with other employees and since 2006, had been given a power of attorney for Mr. Cheeseman. (Transcript pages 77-79, attached hereto as Exhibit 2). The following testimony given by Nancy Macknatt sums up the actual situation in the years 2006 and 2007:

"Q:    During this period of time in 2007, I'm going to focus on that year, was Mr. Cheeseman participating in the sale of the guns actually on the counter, selling to people?

A:    I never observed him doing that.

Q:    Was he participating in the purchase of firearms at that time, personally?

A:    Our store manager does that.

Q:    Okay. Was he participating in the day-to-day management of the business at that time?

A:    No. Pretty much the store manager and I were doing it. We were -- I was paying all the bills and Bob and Dave Johnson -- Dave did certain parts of the store. He ordered things and Bob ordered, like, the guns, that sort of thing.

Q:    Was your brother engaged in any active part of running the business during that period of time, to the best of your knowledge?

A:    Did he -- I'm sorry?

Q:    Other than the fact that the license was in his name, was he engaged in the day-to-day management of the business at any time in the preceding two or three months before his arrest?

A:    Not that I'm aware of.

Q:    How long had it been since he effectively engaged in the business?

A:    About a couple years.

Q:    So he really wasn't engaged much in the day-to-day

The Honorable Sue L. Robinson
August 29, 2008
Page 3

operations?

A:    No.  I mean, if I needed him for something, I would just
      call him."

(Exhibit 2, Transcript pages 80-81)

The evidence from the hearing clearly portrays Mr. Cheeseman as an absentee owner/
operator of a gun shop who held a federal firearms license.  Other than helping himself to money
apparently generated by the business through the use of his ATM card[2] to feed his addiction, Mr.
Cheeseman was not actively engaged in the business.  There is simply no evidence that he ever
used or involved a firearm in any manner to facilitate his cocaine addiction.

The Government did present evidence that Mr. Cheeseman had designated certain
firearms as being part of his personal collection.  Agent Iardella, through an administrative
inspection in January, 2007, identified a number of firearms noted as being part of his personal
collection.  This list of firearms was introduced as Exhibit 11 at the forfeiture proceeding.  Agent
Iardella described the process as to how it was determined that a firearm was part of Mr.
Cheeseman's personal collection.

"Q:    And could you explain what disposed to personal
       collection means?

A:    It's in the acquisition and disposition record of the gun
      dealer, the guns that are acquired by the business.  The
      other side of the books is disposition side.  He logs them
      out to himself.  So on the disposition side, it would have
      James L. Cheeseman.  So it would come into the store as
      X-Rings and then be logged out to the owner's personal
      collection."

(Exhibit 2, Transcript page 32)

Mr. Cheeseman does not dispute that there were a number of firearms that he logged out
as being his personal property and not part of the store's inventory.  Mr. Cheeseman does,
however, question the accuracy of Agent Iardella's testimony that some twenty-six (26) firearms
logged out to Mr. Cheeseman's personal collection could not be accounted for.  Although not
stated in so many words, the Government seems to imply or suggest that the missing or
unaccounted for firearms are proof that Mr. Cheeseman either "used" or "involved" these
firearms in his addiction.  That assumption or suggestion is simply inaccurate.  Agent Iardella

---

[2] Testimony of ATF Agent Diane Iardella and Nancy Macknatt (Exhibit 2, Transcript pages 36-38, and 88).

The Honorable Sue L. Robinson
August 29, 2008
Page 4

admitted she only checked records back to 1995.  Regardless, her testimony is both incomplete and in error.

Exhibit 13 introduced by the Government at the hearing purports to list twenty-six (26) firearms that were listed on the January, 2007 inventory list (Government's Exhibit 11 introduced at the hearing) that were not recovered from the store.  Twelve (12) of the allegedly missing firearms can be accounted for in the Acquisition and Disposition records and only three (3) of those firearms accounted for in the books pre-date 1995.  For example, the following firearms from the Government's Exhibit 13 have been located in Mr. Cheeseman's records:

1.    Norinco/Sile, Model 565-1, Serial No. 409998 - re-acquired by X-Ring on November 17, 1993, and transferred to third party on the same date

2.    Ruger, Model 10/22, Serial No. 23683609 - re-acquired by X-Ring on September 10, 1994, and transferred to third party on October 24, 1994

3.    Walther, Model GSP, Serial No. 62702 - re-acquired by X-Ring on October 23, 1995, and transferred to a third party on the same date

4.    Knight Stoner, Model SR25 match, Serial No. 24098 - re-acquired by X-Ring on August 30, 1995, and transferred to third party on the same date

5.    Ruger, Model Mini 14, Serial No. 18252031 - re-acquired by X-Ring on July 23, 1997, and transferred to a third party on August 30,1997

6.    Remington, Model XP-100, Serial No. 87518040 - re-acquired by X-Ring on November 14, 1997, and transferred to third party on same day

7.    Winchester, Model 1897, Serial No. H9452 - re-acquired by X-Ring on December 9, 2000, and transferred to third party on same day

8.    Springfield ALR Ord., Model M1 Tanker Garand, Serial No. 394914 - re-acquired by X-Ring on March 20, 1998, and transferred to third party on March 21, 1998

9.    Polytech, Model AK47, Serial No. 8799 - re-acquired by X-Ring on March 20, 1998, and transferred to third party on March 21,1998

The Honorable Sue L. Robinson
August 29, 2008
Page 5

10.  Polytech, Model AKS-762, Serial No. CF-10658 - re-acquired by
     X-Ring on April 9, 1998, and transferred to third party on
     April 11,1998

11.  Mitchell Arms, Model GS45, Serial No. M951613 - re-acquired by
     X-Ring on July 31, 1998, and transferred to third party on the
     same date

12.  Para Ordance, Model P12, Serial No. RS4691 (listed as RJ in
     X-Ring records) - re-acquired by X-Ring on December 22, 1994,
     and transferred to third party on the same date

(Exhibit 3, attached hereto)[3]

Even though Mr. Cheeseman held a federal firearms license, he was not required to record the transfer of a firearm held by him for personal use if he had it for at least a year. Moreover, it is submitted that Mr. Cheeseman could likely account for all the alleged missing firearms if he had access to the records seized by the Government. The firearms listed as recovered in the Government's Exhibit 12 introduced at the hearing are firearms belonging to Mr. Cheeseman and were not part of the seized inventory.

While it is contended that none of the firearms can be forfeited for the reasons already noted, Mr. Cheeseman submits that the Court can distinguish between the inventory of X-Ring Supply and the personal collection of firearms held separately by Mr. Cheeseman[4]. The value of the personal firearms still in the possession of the Government is approximately $67,000.00[5]. Two of the firearms identified by the Government as having been recovered (United States, Exhibit 12 Forfeiture Hearing), the Kimber Classic K770 Models K0012 and K0005, are very rare and valuable. Mr. Cheeseman estimates these rifles are worth between $10,000.00 and $40,000.00 and $15,000.00 and $50,000.00, respectively. The $67,000.00 figure estimated as the value of the personal firearms uses the lower end valuations for the Kimber firearms. If they

---

[3] Exhibit 3 consists of the acquisition page and corresponding disposition pages taken from Mr. Cheeseman's state books. The Government seized most of Mr. Cheeseman's records precluding him from tracing the whereabouts of all the alleged missing firearms. Additionally, Mr. Cheeseman can account for 2 other firearms on the list - the Colt 1991 Compact and Caspian Arms LTD, Hi Cap Kit 1911. The Colt was sold to a friend some time in 1994 and the Caspian Arms firearm was re-acquired by X-Ring on February 21, 1998, and logged in. See last page of Exhibit 3.

[4] The firearms held personally by Mr. Cheeseman were for several years kept at the home of his former wife. Even after he retrieved them and brought them back to X-Ring Supply, these firearms were segregated from the store inventory (Exhibit 2, Transcript pages 70-71 and 90-92).

[5] This figure utilizes the estimated value of the firearms as determined by the Government and the estimated value of some of the personal firearms, including the 2 Kimber firearms, which was supplied to the Government by letter in early June of 2008 and has not been disputed.

The Honorable Sue L. Robinson
August 29, 2008
Page 6

are valued at the high end, the personal firearms may have an estimated value of approximately $132,000.00[6].

The Government allows that it has seized firearms valued in excess of $371,500.00 (F.N. 2, page 2 of the Government's letter to the Court dated August 6, 2008), but it does not contest the fact that when unaccounted for ammunition and collector value is included, the total value of the seized property may be in excess of $500,000.00. It is contended that the seizure of such a valuable collection of firearms, the large majority of which are indisputably the inventory of X-Ring Supply, has "absolutely no correlation to any damages sustained by society or to the cost of enforcing the law". *Austin v. U.S.*, 509 U.S. 602, at 622, citing *U.S. v. Ward*, 448 U.S. 242 (1980). Even though Mr. Cheeseman's sentencing will not occur until this matter has been resolved, the fact that Mr. Cheeseman is a first-time offender will likely impact upon the amount of fine, if any, imposed by this Court. The fine range for Mr. Cheeseman is $7,500.00 to $75,000.00 pursuant to U.S.S.G. § 5E 1.2(c)(3). Despite this fact, the Government proposes a seizure having a value nearly seventy (70) times in excess of the minimum guideline recommended fine[7].

The Government intends to destroy all forfeited firearms and ammunition.. (Exhibit 2, Transcript pages 3 and 4). Such forfeiture and destruction are completely unnecessary in this case for the reasons argued in counsel's letter to the Court dated August 8, 2008 and stated herein. The firearms and ammunition are not in and of themselves contraband. They are lawfully sold in every state in America. The forfeiture, at least in this case, is not associated with any unlawful use or trade of the firearms. The firearms and ammunition are being sought by the Government simply because Mr. Cheeseman held a Federal Firearms License ("FFL") at the time of his arrest. Shortly after his arrest, Mr. Cheeseman sought to transfer all the assets of X-Ring to his sisters, who have purchased the business and its inventory (including the seized property) (Exhibit 2, Transcript pages 81-83) and obtained a FFL[8]. If the firearms are returned to X-Ring Supply, they would be handled in a lawful manner, subject to the laws and rules applicable to the sale of firearms. When asked how the seized property would be handled if returned to X-Ring Supply, Nancy Macknatt stated as follows:

> "A:    Just like we do with any other firearm. They would be
>        logged into our books, and any guns that are sold, they
>        must fill out paperwork, state and federal paperwork, and

---

[6] Considering the extremely valuable nature of the 2 Kimber rifles, if the Court determines that equitable principles should govern in the determination whether the Government's proposed seizure is an excessive penalty under the Eighth Amendment, it is submitted that these 2 firearms should be excluded from seizure. If excluded, the forfeiture of the remaining firearms held by the Government would still be valued at approximately $42,000.00.

[7] The weakness of the Government's position is best evidenced by the somewhat bizarre assertion that had the Government charged Mr. Cheeseman with six hundred (600) offenses, as it apparently could under a literal interpretation of the law, he would have faced possible statutory fines amounting to $150,000,000.00. Therefore, the Government argues the seizure of the inventory and personal firearms, even if valued in excess of $500,000.00, is well within the sense of fairness.

[8] Mr. Cheeseman has no interest in X-Ring Supply LLC (See Exhibit 4, Affidavit of Nancy Macknatt).

The Honorable Sue L. Robinson
August 29, 2008
Page 7

> then we call into the state so that they can do a background
> check, and we call into the federal, and then they do a back-
> ground check, and they're the ones that tell us, yes or no, if
> that particular person can have a gun or not.

Q:    And your brother would have absolutely no contact with
      those firearms, would he?

A:    No.

Q:    And you understand he's a person prohibited --

A:    Yes.

Q:    -- as of he entered the guilty plea?

A:    Yes.

Q:    If the firearms and ammunition were returned to you, would
      you be able to sell them in the normal course of business?

A:    Yes."

                                    (Exhibit 2, Transcript page 85)

The Court ultimately must determine whether the Government has the statutory authority
to forfeit the firearms and ammunition that was seized.  Counsel for both Mr. Cheeseman and the
Government have argued their respective positions regarding the statute in issue.  In interpreting
whether the wording of 18 U.S.C.A. § 924(d)(1), "involved in or used in any knowing violation"
is applicable to the factual situation before the Court, it is submitted the wording is ambiguous at
best.  In such situations, the law must be interpreted in favor of the defendant, Mr. Cheeseman.
In a somewhat analogous situation, the United States Supreme Court recently rejected the
Government's argument that the term "proceeds" in the money-laundering statute, 18 U.S.C.
§ 1956, included receipts.  In rejecting the argument of the Government, the United States
Supreme Court in an opinion authored by Justice Scalia stated:

> "Under either of the word's ordinary definitions, all provisions
> of the federal money-laundering statue are coherent; no provisions
> are redundant; and the statute is not rendered utterly absurd.  From the face
> of the statute, there is no more reason to think that 'proceeds' means
> 'receipts' than there is to think that 'proceeds' means 'profits'.  Under a
> long line of our decisions, the tie must go to the defendant.  The rule of
> lenity requires ambiguous criminal laws to be interpreted in favor of
> the defendants subjected to them [citations omitted].  This venerable rule
> not only vindicates the fundamental principle that no citizen should be

The Honorable Sue L. Robinson
August 29, 2008
Page 8

held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead. Because the 'profits' definition of 'proceeds' is always more defendant-friendly than the 'receipts' definition, the rule of lenity dictates that it should be adopted."

*United States v. Santos*, 128 S.Ct. 2020, 2025 (June 2, 2008)

In conclusion, it is submitted that all the firearms should be returned to X-Ring Supply LLC now owned by Nancy Macknatt and Pam Rhoades rather than destroyed. The forfeiture statute is not applicable to the facts of this case as the seized property was neither "used" nor "involved" with Mr. Cheeseman's drug addiction. In the alternative, if the Court determines the forfeiture law covers this situation, it is submitted the penalty the Government seeks to impose upon Mr. Cheeseman is grossly excessive and unfair and that the seized property should be returned to X-Ring Supply as the Court deems just.

Respectfully submitted,

*/s/ Charles M. Oberly, III, #743*

Charles M. Oberly, III (ID# 743)

CMO,III/mdm
Attachments

cc: Keith M. Rosen, AUSA

# EXHIBIT 1



**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

---

*Nemours Building*                                    *(302) 573-6277*
*1007 Orange Street, Suite 7100*              *FAX (302) 573-6220*
*P.O. Box 2046*
*Wilmington, Delaware 19899-2046*

August 21, 2008

**Hand Delivered**

Charles M. Oberly, III, Esquire
WolfBlock
1100 N. Market Street
Suite 1001
Wilmington, Delaware   19801

Re:  **United States  v.  James L. Cheeseman**
        **Criminal Action No.  07-124-SLR**

Dear Charlie:

In our prior discussions, I indicated that I would argue that the firearms are forfeitable under the "involved in" clause of Section 924(d)(1), and not the "used in" clause. While the application of the "involved in" clause remains my principal argument, my review of your letter memorandum and the cases cited therein since the hearing suggests that the Government should also prevail under the "used in" clause. Accordingly, I do not expect to concede that "used in" does not apply here in my post-hearing brief.

As our briefs will be filed simultaneously, I am giving you notice of this argument. If you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

COLM F. CONNOLLY
United States Attorney

By:_____
Keith M. Rosen
Assistant United States Attorney
Chief, Criminal Division

pc:  Joseph Hurley, Esquire

KMR:sfb

# EXHIBIT 2

1          If the Court would permit, I would ask that the

2    Court have the defendant put that on the record so that we

3    don't come back to this at some later date with an issue

4    being raised about a conflict.

5          Thank you, your Honor.

6          THE COURT:  All right.

7          MR. ROSEN:  Otherwise, the government is

8    prepared to proceed at the courts direction.

9          THE COURT:  All right.  I guess, before we

10   begin, we do need a statement from Mr. Cheeseman that the

11   fact that Mr. Oberly is representing him in the criminal

12   proceeding and his sisters in what may or may not be part of

13   the forfeiture proceeding is not a problem for you.

14         THE DEFENDANT:  No, your Honor.

15         THE COURT:  All right.  Before we begin, I need

16   the bottom lines in terms of what each party wants, because

17   it's not altogether clear.

18         I take it the government believes that it is

19   appropriate to seize -- well, it already has seized, are but

20   to destroy, I take it, the 600-plus guns.  Is that right,

21   Mr. Rosen?

22         MR. ROSEN:  Yes, your Honor.  The government's

23   position is that the weapons are forfeitable under Section

24   924(d)(1) of Title 18, which provides that any weapons

25   involved in or used in a 922(g) offense are forfeitable to

1   the government.  This will likely result in the destruction

2   of the weapons since, as the Court may or may not be aware,

3   the government, by statute, does not sell firearms when it

4   forfeits them.  But that issue is not before the Court.  The

5   bottom line for the government is that these weapons are

6   properly forfeitable.  We noticed them in the indictment in

7   a Notice of Forfeiture.  Administrative notices were sent to

8   the defendant concerning the forfeiture of the weapons and

9   we're proceeding criminally with that as opposed to a civil

10  proceeding.

11              THE COURT:  All right.  And in your mind, you

12  think this certainly is legal, but also reasonable?

13              MR. ROSEN:  Correct, your Honor.  And to put a

14  slightly finer point on it, if I can, under the Supreme

15  Court's decision in Bajakajian, that the forfeiture is

16  not grossly disproportionate to the severity of the

17  offense.

18              THE COURT:  All right.  Thank you, Mr. Rosen.

19              Mr. Oberly, what is it that defendant wants to

20  accomplish by reason of this hearing?

21              MR. OBERLY:  Your Honor, I guess the basic thing

22  we would like, to be a fair distribution of what we think

23  would be fair under the circumstances.  We've made two

24  arguments in our response to the government's position.

25              One is, we do take the position that the

Iardella - direct

1    A.    Yes.

2    Q.    And could you explain what disposed to personal

3    collection means?

4    A.    It's in the acquisition and disposition record of the

5    gun dealer, the guns that are acquired by the business.  The

6    other side of the books is disposition side.  He logs them

7    out to himself.  So on the disposition side, it would have

8    James L Cheeseman.  So it would come into the store as

9    X-Rings and then be logged out to the owner's personal

10   collection.

11   Q.    When you did the inventory of the store in August of

12   2007, did you compare the inventory of the store with this

13   personal collection list?

14   A.    Recently, yes.

15   Q.    All right.  And at the time you did the search, did

16   the defendant distinguish between the personal collection

17   guns and the store inventory guns?

18   A.    Yes.

19   Q.    How so?

20   A.    He had them marked with a tag that said owner's

21   personal collection hanging off of, you know, whatever

22   container the guns would have been in.

23   Q.    All right.  Were all the guns that were disposed to

24   personal collection found in the store at the time of the

25   search warrant?

Iardella - direct

1   A.     Yes.

2   Q.     This was -- the arrest in this case was on August

3   the 5th by State Police?

4   A.     Yes.

5   Q.     Agent Iardella, are you familiar with how, from your

6   investigation, how X-Ring Supply handled its banking and its

7   money?

8   A.     I'm familiar with, yes, looking at some of the banking

9   documents, yes.

10  Q.     Would it be fair to say that the banking for the

11  business was done in a bank account in the name of Mr.

12  Cheeseman?

13  A.     Yes.

14  Q.     Did you come to determine who had a debit card on that

15  account?

16  A.     Yes.

17  Q.     And who was that?

18  A.     Mr. Cheeseman.

19  Q.     Did you analyze the financial records from that bank

20  account for a period of time, from December of '06 through

21  May of 2007?

22  A.     Yes.

23  Q.     And could you describe in general terms what you

24  found?

25  A.     Numerous ATM bank transactions on a given day, like

Iardella - direct

1    four or five times a day, to the tune of, for the month, I

2    think about probably between 12,000 and $15,000 was taken

3    out, just in ATM fees.  Not fees -- ATM money.

4                MR. ROSEN:  I'm showing counsel what I have

5    already marked for identification as Government's Exhibit 14

6    (handing exhibit to Mr. Oberly).

7                May I hand up a copy, your Honor?

8                THE COURT:  Yes.  Thank you.

9                (Mr. Rosen handed an exhibit to the Court.)

10   BY MR. ROSEN:

11   Q.    Agent Iardella, showing you what has been marked for

12   identification as Government's Exhibit 14, ask you to take a

13   look at that, please (handing exhibit to the witness).

14                Do you recognize what that is?

15   A.    Yes.

16   Q.    What's Government's 14?

17   A.    It's just a summary of the ATM withdrawals, just

18   showing the high frequency of the certain -- like every

19   day almost there was money taken out of an ATM.  Some of

20   these days were higher frequency, four and five and six

21   times and at different MAC machines.  It wasn't the same MAC

22   machine that somebody was going to.

23   Q.    Okay.  So for each month that was analyzed there, you

24   have listed a total amount of ATM withdrawals; is that

25   right?

Iardella - direct

1    A.    Yes.

2    Q.    And what was the range of amounts for that?

3    A.    For these months, 12,000 to $17,000.

4    Q.    Okay.  And you have certain days broken out there?

5    A.    Yes.

6    Q.    Are those representative days?

7    A.    Yes.

8    Q.    So those aren't the only days when ATM transactions

9    were done?

10   A.    No.

11   Q.    And for those representative days, what have you

12   identified?

13   A.    The number of withdrawals and the amount, the total

14   amount of withdrawal from, like, that day.

15   Q.    Did you, after doing this analysis, speak to other

16   people who worked at X-Ring Supply and try to determine

17   whether this was a business purpose for these withdrawals?

18   A.    Yes.

19   Q.    And what did you determine?

20   A.    There wasn't a business purpose on their end.

21             MR. ROSEN:  May I have a moment, your Honor?

22             THE COURT:  Yes, you may.

23             (Pause.)

24   BY MR. ROSEN:

25   Q.    Agent Iardella, you talked about the inspection that

70

Walker - direct

1    went outside, and a few minutes later, a customer came in

2    and came to me and said, What's he on?

3                I said, What do you mean?

4                He said, You know, he's on something.

5                I said, No, he's probably just drunk.

6                And the customer said, No.  He's -- he's on

7    crack or cocaine.  He's high.

8    Q.    Why did you say he's probably just drunk?

9    A.    He liked to have a few drinks now and then.

10   Q.    While he was at work?

11   A.    Mostly after work.

12   Q.    I want to take you to July 29th of '07.  Do you recall

13   helping Mr. Cheeseman move some guns out of his ex-wife's

14   house on that day?

15   A.    If that was a Sunday, yes.

16   Q.    Tell us what you were there do that day?

17   A.    I was just there helping him move his personal

18   belongings out of the house.

19   Q.    Did Mr. Cheeseman bring a trailer or a truck or

20   something like that to take the equipment?

21   A.    Yes.  He brought his -- I think it was an Excursion

22   and a trailer.

23   Q.    Did Mr. Cheeseman seem high or inebriated at the time

24   to you?

25   A.    Didn't seem to be.  Not that I could tell.

Walker - direct/cross

1    Q.    Did you help him load the guns into the trailer?

2    A.    Yes.

3    Q.    Did you help Mr. Cheeseman unload the guns?

4    A.    No.

5           MR. ROSEN:  Thank you, your Honor.  I have no

6    further questions.

7           THE COURT:  All right.  Cross-examination.

8                      CROSS-EXAMINATION

9    BY MR. OBERLY:

10   Q.    At the time Mr. Cheeseman removed the guns from

11   his house, he had been divorced from his wife; is that

12   correct?

13   A.    Yeah, I guess.  I don't -- I don't remember the exact

14   date of his divorce or whatever.

15   Q.    That occurred some time around 2002/2003.  Is that

16   your memory?

17   A.    The divorce?

18   Q.    Yes.

19   A.    Yeah.

20   Q.    2004, somewhere in that area?  It's before Charlotte

21   was there in 2005, wasn't it?

22   A.    Yeah, I believe so.

23   Q.    All right.  You indicated that in the period of about

24   ten years, you worked there maybe a little over ten years,

25   during that period of time, did you ever see Mr. Cheeseman

Macknatt - direct

1               DEFENDANT'S TESTIMONY

2             NANCY J. MACKNATT, having been duly

3      sworn as a witness, was examined and testified as

4      follows...

5               DIRECT EXAMINATION

6   BY MR. OBERLY:

7   Q.   Ms. Macknatt, what is your present employment?

8   A.   X-Ring Supply, LLC.

9   Q.   I'm sorry.  You've got to speak louder, into the

10  microphone so we can hear you.

11  A.   X-Ring Supply, LLC.

12  Q.   Okay.  And are you the owner/operator of that business

13  at the present time?

14  A.   Yes.

15  Q.   I'd like to focus on the period of time starting in

16  about 2005/2006.  Were you employed at X-Ring Supply at that

17  time?

18  A.   Yes.

19  Q.   And in what capacity were you employed?

20  A.   I did all the book work.

21  Q.   Okay.  Could you lean the mike closer so we can all

22  hear you?

23  A.   I did the book work.

24  Q.   And how long had you been employed there?

25  A.   Five or six years, I guess.

Macknatt - direct

1    Q.    And who else worked with you at X-Ring?

2    A.    There was Ron and Dave Johnson, Robert Henry, and

3    later on, Dave black came in.

4    Q.    Did there come a time that you actually had power of

5    attorney over your -- let me strike that.

6          Who is James Cheeseman?

7    A.    My brother.

8    Q.    And is he an older brother or younger brother?

9    A.    He's younger than I am.

10   Q.    Okay.  Was there a time in which you obtained a power

11   of attorney on behalf of your brother?

12   A.    Yes.

13   Q.    And when did that occur?

14   A.    2006.

15   Q.    And why did you get a power of attorney for him?

16   A.    My mother felt that he should have a power of

17   attorney, that we should have one, because he was divorced

18   and didn't have a will or anything else.

19   Q.    Were you aware back in 2006 that he had a cocaine

20   addiction problem?

21   A.    No.

22   Q.    Were you aware that he had any problems at that time?

23   A.    Other than I knew he had hernia problems and some

24   heart problems, that sort of thing.

25   Q.    When did you become aware for the first time that he

Macknatt - direct

1    had a cocaine addiction?

2    A.    For sure, just before he went to the first treatment

3    center.

4    Q.    And when did he go for treatment?  Do you remember

5    when that was?

6    A.    I don't really remember.

7    Q.    Was that prior to his arrest?

8    A.    I believe it was.

9    Q.    Okay.  Focusing in on the time period of August/July

10    of 2007, who actually ran and operated the day-to-day

11    activities of the gun store?

12    A.    The store manager, Robert Henry, and myself.

13    Q.    Okay.  The store was owned by your brother, is that

14    correct, during this period of time?

15    A.    Yes.

16    Q.    And the Federal Firearms License was in his name at

17    that period of time?

18    A.    That's correct.

19    Q.    How often did you observe your brother on the

20    premises?

21    A.    It was sporadic.  I mean, sometimes I would see him

22    two or three times a week.  Sometimes I wouldn't see him for

23    a week.

24    Q.    Were you aware that he was utilizing the warehouse to

25    stay at sometimes?

Macknatt - direct

1    A.    The warehouse?

2    Q.    Yes.

3    A.    I didn't think he stayed in the warehouse.  I knew he

4    stayed in the store once in a while.

5    Q.    Okay.  So you were aware that he stayed in the store,

6    but you were not aware he was sleeping in the warehouse on

7    occasion?

8    A.    No.  He was usually, from my understanding, is the

9    beach.  He has a beach place, and then he has -- had a

10   girlfriend up in Pennsylvania.

11   Q.    And --

12   A.    Once in a while, he would stay in the store.

13   Q.    During this period of time in 2007, I'm going to focus

14   on that year, was Mr. Cheeseman participating in the sale of

15   the guns actually on the counter, selling to people?

16   A.    I never observed him doing that.

17   Q.    Was he participating in the purchase of firearms at

18   that time, personally?

19   A.    Our store manager does that.

20   Q.    Okay.  Was he participating in the day-to-day

21   management of the business at that time?

22   A.    No.  Pretty much the store manager and I were doing

23   it.  We were -- I was paying all the bills and Bob and

24   Dave Johnson -- Dave did certain parts of the store.

25   He ordered things and Bob ordered, like, the guns, that sort

Macknatt - direct

1   of thing.

2   Q.     Was your brother engaged in any active part of running

3   the business during that period of time, to the best of your

4   knowledge?

5   A.     Did he -- I'm sorry?

6   Q.     Other than the fact that the license was in his name,

7   was he engaged in the day-to-day management of the business

8   at any time in the preceding two or three months before his

9   arrest?

10  A.     Not that I'm aware of.

11  Q.     How long had it been since he effectively engaged in

12  the business?

13  A.     About a couple years.

14  Q.     So he really wasn't engaged much in the day-to-day

15  operations?

16  A.     No.  I mean, if I needed hem for something, I would

17  just call him.

18  Q.     You were aware, however, he was staying overnight

19  there on occasion?

20  A.     Yes.

21  Q.     Subsequent to the arrest of your brother, did

22  you attempt to purchase his interest in the business from

23  him?

24  A.     Before he was arrested?

25  Q.     No.  Subsequent to his arrest, after his arrest, did

Macknatt - direct

1    you attempt to purchase the business?

2    A.    Yes.  Right immediately after.

3    Q.    And did you and your brother go so far as to seek

4    legal counsel?

5    A.    Yes.

6    Q.    And did you have legal counsel attempt to draw up a

7    contract to purchase the business?

8    A.    Yes.

9    Q.    And was that a contract that was dated October 1st of

10   2007?

11   A.    That's when the settlement was to happen, but we

12   actually went to see Mr. Dixon, I believe it was, like,

13   September 7th.

14   Q.    And that was after his arrest, but, in any event; is

15   that correct?

16   A.    Yes.

17   Q.    And did that sale ever go through?

18   A.    Yes.

19   Q.    And when did it go through?

20   A.    Well, we signed all the paperwork October.  It

21   was before October 1st, actually, or right around

22   October 1st.

23   Q.    Did you subsequently or at some point in time apply

24   for a Federal Firearms License?

25   A.    Yes.

Macknatt - direct

1   Q.     Did you obtain a Federal Firearms License?

2   A.     It took a while, but, yes.

3   Q.     In whose name is the Federal Firearms License in

4   now?

5   A.     It's in the business name, X-Ring Supply LLC.

6   Q.     And who owns that?

7   A.     My sister, Pam Rhodes, and I.

8   Q.     And is Jim Cheeseman any part of that operation at the

9   present time?

10  A.     Yes.

11  Q.     Are you currently operational?

12  A.     Yes.

13  Q.     Are you currently selling guns and firearms and

14  ammunition?

15  A.     Yes.

16  Q.     And are you aware that the federal government has

17  seized about 600-plus firearms plus ammunition and gun

18  powder that was one part of the inventory of that store?

19  A.     Yes.

20  Q.     Were you aware that your brother had a personal

21  collection of firearms that he kept or identified

22  separately?

23  A.     Yes.

24  Q.     And do you know where he kept those firearms prior to

25  his arrest?

Macknatt - direct

1  having to do with the forfeiture of the firearms that were

2  seized when the federal authorities executed a search

3  warrant; is that correct?

4  A.    Yes.

5  Q.    If those firearms were to come back into your

6  possession, how would they be handled?

7  A.    Just like we do with any other firearm.  They would

8  be logged into our books, and any guns that are sold, they

9  must fill out paperwork, state and federal paperwork, and

10 then we call into the state so that they can do a background

11 check, and we call into the federal, and then they do a

12 background check, and they're the ones that tell us, yes or

13 no, if that particular person can have a gun or not.

14 Q.    And your brother would have absolutely no contact with

15 those firearms, would he?

16 A.    No.

17 Q.    And you understand he's a person prohibited --

18 A.    Yes.

19 Q.    -- as of he entered the guilty plea?

20 A.    Yes.

21 Q.    If the firearms and ammunition were returned to you,

22 would you be able to sell them in the normal course of

23 business?

24 A.    Yes.

25              MR. OBERLY:  I have no further questions.

Macknatt - cross

1    money out of the account were your brother and Bob Henry;

2    is that right?

3    A.    Correct.

4    Q.    There came a time, though, about two months or so

5    before your brother was arrested that you did notice some

6    unusual financial transactions on the bank account; is that

7    correct?

8    A.    Correct.

9    Q.    And you saw a lot of ATM withdrawals on the account?

10   A.    Yes.

11   Q.    And you knew that your brother had the ATM card on the

12   account?

13   A.    Yes.

14   Q.    And you got concerned about this; is that right?

15   A.    Yes.

16   Q.    And was this before or after you had taken your

17   brother to his first attempt at rehab?

18   A.    I believe it was just before.

19   Q.    Okay.  And when you got concerned about this, you

20   actually took the debit card away from him; is that right?

21   A.    I don't remember doing that.

22   Q.    You don't?  Okay.  Do you remember telling -- do you

23   remember Agent Iardella?

24   A.    Yes.

25   Q.    Do you remember talking to her?

Macknatt - cross

1    A.    Occasionally, yeah.

2    Q.    Okay.  And it sounds like you saw him exhibiting some

3    behaviors that gave you concern --

4    A.    Mm-hmm.

5    Q.    -- when he was at the store.  You mentioned falling

6    asleep at the desk, or what have you?

7    A.    Right.

8    Q.    Were you seeing your brother outside of the store

9    context as well?

10   A.    Not really.

11   Q.    Okay.  So whatever it is that --

12   A.    Holidays.

13   Q.    I'm sorry?

14   A.    Holidays.

15   Q.    Okay.  But at this time in 2007, whatever you saw that

16   made you decide I need to ask Jim if he's on drugs was what

17   you saw when he was at the store.  Is that about right?

18   A.    Mm-hmm.

19   Q.    Okay.  You were asked by Mr. Oberly about Jim's

20   personal guns.

21   A.    Mm-hmm.

22   Q.    Do you remember that?

23   A.    Mm-hmm.

24   Q.    And you talked about how they were kept at the

25   ex-wife's house?

Macknatt - cross

1    A.    Mm-hmm.

2    Q.    And eventually he took them out of there?

3    A.    Right.

4    Q.    And I think you said that after that point, the guns

5    were kept at the store?

6    A.    Correct.

7    Q.    How did you know that?

8    A.    I saw them.

9    Q.    You saw guns at the store?

10   A.    Right.  They were back in the bathroom.

11   Q.    I'm sorry.  Where were they, ma'am?

12   A.    They were back -- we have a large bathroom.  They were

13   kept on top of the filing cabinet.

14   Q.    Back in the bathroom.  Is that what you said?

15   A.    Mm-hmm.

16   Q.    Where is that bathroom in relationship to the rest of

17   the layout of X-Ring Supply?

18   A.    Well, the store is in the front.  Then you have to go

19   back to the office and then it's off to the side of the

20   office.

21   Q.    And how did you know they were Jim's guns as opposed

22   to just some other inventory that was kept in the bathroom?

23   A.    Because I was told they were brought back there.

24   Pat wanted them out of the house.  He had to bring them

25   back.

Macknatt - cross

1    Q.    Who told you that?

2    A.    My brother told me that Pat told him that it was time

3    for him to get his property --

4    Q.    Okay.

5    A.    -- from the house.

6    Q.    And you said these guns, they were in that bathroom on

7    top of some filing cabinets?

8    A.    Mm-hmm.

9    Q.    Is that right?  And these were both long guns and

10   handguns; is that right?

11   A.    I guess, yeah.  I didn't really pay attention to

12   them.

13   Q.    Okay.  And there were a lot.  We're talking about

14   40 or so guns?

15   A.    I'm not sure.  Like I said, I didn't really -- I

16   didn't really pay attention to them.  I just knew they

17   were his and they were up there.  I don't know what he

18   had.

19   Q.    All right.  And were they locked up in there?  Were

20   they in a safe or secured in any way or were they just lying

21   on the file cabinets?

22   A.    On top of the filing cabinets.

23   Q.    All right.  You knew a woman named Charlotte?

24   A.    Yes.

25   Q.    And what was Charlotte's relationship with your

# EXHIBIT 3

# FIREARMS

**Page** 1A

**ACQUISITION AND**

| # | MANUFACTURER AND/OR IMPORTER | MODEL | SERIAL NUMBER | TYPE OF ACTION | CALIBER OR GAUGE | DATE | FROM WHOM RECEIVED (Name and address or Name and License Number) |
|---|---|---|---|---|---|---|---|
| | Intratec | DC9 | DO 51207 | Semi Auto | 9mm | 11/17/93 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Intratec | DC9 | DO 47692 | Semi Auto | 9mm | 11/17/93 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Intratec | DC9 | DO 47694 | Semi Auto | 9mm | 11/17/93 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Ruger | 77 | 781 44413 | Bolt | 300 | 11/17/93 | Creeses Custom Repair FFL #52 33470 |
| | Norinco | 565 | 469998 | Semi Auto | 762 | 11/17/93 | James L Cheeseman (owner) Gunroom DR Middletown DE 19205 |
| | Colt | Sporter Lt Weight | SCO 15986 | Semi Auto | 223 | 11/18/93 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Intratec | DC9 | DO 51212 | Semi Auto | 9mm | 11/18/93 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Intratec | DC9 | DO 48917 | Semi Auto | 9mm | 11/18/93 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Intratec | DC9 | DO 48918 | Semi Auto | 9mm | 11/18/93 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Smith Wesson | 6906 | TDO 6916 | Semi Auto | 9mm | 11/19/93 | Philip V Jennings |
| | Ruger | Mini 14 | 187 90266 | Semi Auto | 223 | 11/19/93 | Philip V Jennings |
| | Bushmaster | XM15 E2S | L638890 | Semi Auto | 223 | 11/19/93 | Philip V Jennings |
| | Remington | 870 | A 511786M | Pump | 12ga | 11/19/93 | Philip V Jennings |
| | Marlin | 60SS | 07453696 | Semi Auto | 22 | 11/19/93 | Walter Craig Inc New Orville Rd POB 557 Selma, AL |
| | Marlin | 883SS | 07652520 | Semi Auto | 22 | 11/19/93 | Walter Craig Inc New Orville Rd POB 557 Selma, AL 36702 |
| | Marlin | 883SS | 07652515 | Semi Auto | 22 | 11/19/93 | Walter Craig Inc New Orville Rd POB 557 Selma, AL |
| | Colt | S81 AR15 | SP 140. 851 | Semi Auto | .223 | 11/20/93 | Joseph W Bolen 40 Star + Heaven Newark DE 19708 |
| | Daewoo | DR100 | 54 7427 | Semi Auto | 223 | 11/21/93 | Larry D Stout 807 Jeffery Pile DR Bear DE 19701 |
| | Intratec | TEC 9 | D77482 | Semi Auto | 9mm | 11/21/93 | Donald E Bradsm 1602 Tudor PL Wilm DE 15810 |
| | Browning | Hi Power | 245NM 31858 | Semi Auto | 9mm | 11/21/93 | William E Evans 1213 W 5th St Wilm DE 19805 |

**DISPOSITION RECORD**

27 CFR Sections 178.121 and 178.125 specify that Dealer Records shall be in permanent form and shall be retained on the licensed premises until discontinuance of business. Within 30 days after discontinuance of business, the records shall be delivered to the Regional Regulatory Administrator for the region in which the business was operated. Records must be available for inspection by ATF officers at all reasonable times.

## DISPOSITION

| DATE | NAME | | | ADDRESS OR LICENSE NUMBER (If Licensed) OR FORM 4473 SERIAL NO. (If Non-Licensee) [File Numerically] |
|---|---|---|---|---|
| 7/93 | CREESES CUSTM SAM | | | FFL 52-33 473 |
| 0/93 | Aston Field rStream | | | FFL 23-18355 |
| 25/83 | John C Townsend | 4/1/63 | DC 0880154 | F4473 NEW CASH DCGS 11/19/83 DA 33197 |
| /94 | Strum Ruger Co | | | 411 Sun Apce St Repair NewPort NH 03773 |
| 7/93 | Scott Smeixell | 5/27/63 | DC 0891203 | F4473 11/11/93 DA 32937 |
| 20/93 | Robert A MacElberry | 12/13/60 | DC 0853064 | F4473 NEWCATR DCCS 11/17/93 DA 33228 |
| 20/93 | John C Townsend | 4/1/63 | DC 0880154 | F4473 NEWCASTR DC GS 11/19/83 DA 33197 |
| 20/93 | Richard R Cephas | 7/12/65 | DC 0917563 | F4473 NEWCASTLE DCGS 11/4/93 DA 33278 |
| 20/93 | Ronald C Walker Jr | 7/5/66 | DC 0926758 | F4473 NEWCATH DCGS 11/22/93 DA 33166 |
| 20/93 | Harry R McDade | | | FFL 23-19004 |
| /94 | Phip V Jennins | 9/4/40 | DC 061642 | F4473 2/19/94 DA 385-51 |
| 23/93 | Danny E Savinn | 8/30/60 | DC 0823300 | F4473 11/32/93 DA 33 445 |
| 6/94 | Mark Stephen Hester | | | F4473 9/10/94 DA |
| 0/94 | Creeses Custm Shop | | | FFL 52-33473 |
| /94 | Creese custom Shop | | | FFL 52-33473 |
| 10/94 | Creeses Custm SAop | | | FFL 52-33473 |
| 18/94 | Swain Fire Arm Supply | | | FFL 52-33052 |
| 21/94 | Williams G Copes | 11/8/47 | DC 529176 | F4473 NEWCASTR DCGS 11/31/93 DA K026 |
| 14/93 | James M Filmut | 11/16/67 | DC 567291 | F4473 Claymnt DCGS 12/3/93 DA 34306 |
| 14/93 | James M Filmmt | 11/16/67 | DC 567291 | F4473 Claymnt DCGS 12/4/93 DA 34266 |

2A

Page 3

# FIREARMS

### ACQUISITION AND

| # | MANUFACTURER AND/OR IMPORTER | MODEL | SERIAL NUMBER | TYPE OF ACTION | CALIBER OR GAUGE | DATE | FROM WHOM RECEIVED (Name and address or Name and License Number) |
|---|---|---|---|---|---|---|---|
| | BRYCO JENNINGS | J59 | 827787 | SEMI Auto | 9mm | 9/8/94 | SILE DIS, INC 990 No COLONY ROAD MERIDEN CT 06450 |
| | SIG SAUER | P229 | AD 22013 | SEMI Auto | 40 S+W | 9/8/94 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Colt | Detective SPECIAL | 5795RD | Revolver | 38 | 9/8/94 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Glock | 17 | APN 95605 | SEMI Auto | 9mm | 9/9/94 | DONALD R HUSTON RD 8 BOX 285-A2 DOVER DC 19901 |
| | BROWNING | ABOLT | 08182 PF 136 | BOH | 22LR | 9/10/94 | STEPHEN V SCAROLL 25 CHARTWELL RD WEST GROVE PA 19390 |
| ✗ | RUGER | 10/22 | 236 83604 | SEMI Auto | 22 | 9/10/94 | JAMES CHEESEMAN  OWNER'S COLLECTION |
| | SIG SAUER | P220 | G 141528 | SEMI Auto | 45 | 9/10/94 | D&B GUNS #22-09863 |
| | Smith Wesson | mod 66 | 9K35627 | Revolver | 357 | 9/10/94 | D+B GUNS # 22-09863 |
| | BERETTA | 92 | E. 249182 | SEMI Auto | 9mm | 9/10/94 | ROBERT A DAVIS 220 GEDDES ST WILMINGTON DE 19805 |
| | Amt | WHRAS | J03276 | SEMI Auto | 22 | 9/10/94 | GILL O BUSK 18 ROURKE CT NEWARK DE 19702 |
| | Colt | Government | 171601 | SEMI Auto | 45 38 | 9/10/94 | ROBERT G BERCHANE 216 STONECROP RD WILM DE 19810 |
| | TAURUS | 684 | SD 287785 | Revolver | 357 | 9/10/94 | FABIO SANSERVINO 4 BARBERRY Pl Wilm DE 19810 |
| | DAN WESSON | 714 | SD 005046 | Revolver | 357 | 9/10/94 | THOMAS G PISER 1903 OAK LANE RD WILM DC 19803 |
| | Remington | VIPER | 3018666 | SEMI Auto | 22 LR | 9/10/94 | JOHN BARTKOWSKI 13 OLESEN AVE. NEW CASTLE DE 18720 |
| | Sterling | MK6 | SA 0808 | SEMI Auto | 9mm | 9/10/94 | WALTER M JOHNSON POB 584 2E MAIN St RISING SUN MD 21911 |
| | BERETTA | 950 | BU 65931V | SEMI Auto | 25 | 9/10/94 | WESLEY H BUCKALEW 1337 SYCAMORE AVE Wilm DC 19805 |
| | Colt | Government | 3089067O | SEMI Auto | 45 | 9/10/94 | DAVID I JONES 1 LAUREL Ct WILM DE 19808 |
| | Colt | 1911 | 588021 | SEMI Auto | 45 | 9/10/94 | DAVID L JONES 1 LAUREL CT WILM DE 19808 |
| | H I STANDARD | VICTOR | 2476292 | SEMI Auto | 22 | 9/10/94 | DAVID L JONES 1 LAUREL CT WILM DE 19808 |
| | SMITH | 686 | BNV2 2200 | Revolver | 357 | 9/11/94 | ROBERT A DAVIS 220 GEDDES St WILM DE 19805 |

# DISPOSITION RECORD

27 CFR Section 178.124 and 178.127 specified records shall be in permanent form and shall be retained on the licensed premises until discontinuance of business. Within 30 days after discontinuance of business, the records shall be delivered to the Regional Regulatory Administrator for the region in which the business was operated. Records must be available for inspection by ATF officers at all reasonable times.

## DISPOSITION

| DATE | NAME | BIRTH DATE | LIC. NO. | ADDRESS OR LICENSE NUMBER (If Licensee) OR FORM 4473 SERIAL NO. (If Non-Licensee) [File Numerically] |
|---|---|---|---|---|
| 10/14/94 | LEONARD Thomas BROWN | 9/23/53 | DE 0662565 | 4473  10/5/94  DA 48126 |
| 9/9/94 | Donald Robert Houston | 3/25/35 | DE 0529711 | #473  9/26/94  DA 46340 |
| 10/14/94 | CARL I MASSEY | 6/18/46 | DE 0500352 | F4473  10/5/94  DA 48133 |
| 9/10/94 | Robert S PAOLO | 7/27/70 | DE 0996568 | F4473  NEWCARLE DC CS  9/10/94  DA 46438 |
| 11/1/95 | FREDERICK H DOWDS | 7/17/58 | DC 779459 | 4473  11/5/95  DA 63355 |
| 10/29/94 | Keith ALLEN KENDALL | 3/14/62 | DE 328520 | F4473  10/20/94  DA 48969 |
| 9/11/94 | MARK ROLAND ZANZOTH | 4/26/73 | DE 0646311 | F4473  NEWCASTLE DC GS  9/12/94  DA 46522 |
| 10/8/94 | FRANCES S.C. Quigley | 12/25/37 | DC 206840 | F4473  10/29/94  DA 47910 |
| 9/11/94 | William RICHARD SCHMELZER | 9/20/56 | DC 0771819 | F4473  NEWCASTLE DC GS  9/15/94  DA 46542 |
| 9/13/94 | Gregory S McCABE | 8/5/36 | DC 0104655 | F4473  9/84/94  DA 46605 |
| 7/28/95 | William Arthur Colwell | 7/10/66 | D 929817 | 4473  7/8/95  DA 59961 |
| 10/31/94 | DENIS Gerald HARRIGAN | 8/13/61 | DE 0642126 | F4473  10/27/94  DA 49013 |
| 10/28/94 | DENIS Gerald HARRIGAN | 8/13/61 | DE 0642126 | F04737  10/13/94  DA 48854 |
| 11/6/94 | JOSEPHINE D JOHNSON | 12/24/47 | DE 785664 | F4473  CING PART DE  11/20/94  DA 49368 |
| 10/8/94 | CARL I MASSEY | 6/18/46 | DC 0500352 | F44473  10/32/94  DA 47889 |
| 2/22/95 | William LudHAM Huckle | 12/30/24 | DE 552457 | 4473  NICK  2/8/95  DA 74 |
| 11/6/94 | ANGELO A BONAVITA | | | FFL 23-36115 |
| 10/22/94 | Astin Field & Stream | | | FFL 23-20607 |
| 10/22/94 | Astin Field & Stream | | | FFL 23-20607 |
| 12/23/94 | JAMES F RECORDS | 6/24/56 | DE 0749755 | 4473  12/88/94  DA 50616 |

3A
Page __ 21

# FIREARMS ACQUISITION AND

| MANUFACTURER AND/OR IMPORTER | MODEL | SERIAL NUMBER | TYPE OF ACTION | CALIBER OR GAUGE | DATE | NAME / ADDRESS | FORM No. |
|---|---|---|---|---|---|---|---|
| S&W | 340 380 sigma | | Sem | 380 | 10/23/05 | Charles Field TLC 6 West Field Ct D PK RD West Field MD 0085-1695 | MCU |
| Rossi | mini 17/17 | 788 38734 | Sem | 223 | 10/23/05 | Mark S Backus 320 Warwick RD Middletown DE 1970 5 30 yrs Dempst records as work PA | Temp |
| IMEZ | 157017/17 | 10th 2000 | Sem | 380 | 10/25 | As Dempst records DE 15713 | Temp |
| S&W | 709 | Mod 50255 | Sem | 45 | 10/25 | Sol valley Howland Dr Kingston DE 19720 | USED |
| Stat | File Sem | 2044 510 | Sem | 45 | 10/25 | Seph D Shelton Dr Capital Sc Newcastle DE 19720 | Trade |
| Walter | GSP Lostpp93 | CO.202 | Sem | 22 | 10/25 | Alexes Aces 6 mAn 053 Ashland NJ Collection 01 GF 33097 | Trade |
| Bushmaster | XM15 | LostPP93 | sem | 223 | 10/25 | Ashland | NEW |
| Remington | 11 87 | 7049847 | auto | 20 ga | 10/25 | ELs 34 - M7973 Brothers Inc | NEW |
| Remington | 870 exp | 891682m | pump | 12ga | 10/25 | FFL 7 - 35 240 Lost Reg as Inc | USED |
| American pins Valtro | pms | PO0809 | pump | 12 ga | 10/24 | ELs 7 - 3 240 | USED |
| American pins Valtro | A9123 | P00905 | Lever | 30-30 | 10/25 | M31+ LMPD 84 - M7973 | USED |
| American Arms Valtro | M92 | Am 05 AD7 | Lever | 44 Mag | 10/25 | FFL 34-17973 John L Lewis | NEW |
| (Valtros Rossi) Rossi | MFa | Amos 908 | SEm | 410 | 10/25/05 | Ashland FFL 34-17973 John L Lewis | NEW |
| Colt | A615 | 505 E 828 | sem | 25 | 10/25 | ELs 23 -34654 Rosen Dale Devins 233 Delaware Rs 19711 | Ther |
| File | Titan | Fi 96308 | SEm | 25 | 10/25/05 | 233 Delaware Rs 19711 | USE |

3 B

# DISPOSITION RECORD

27 CFR Sections 178.121 and 178.127 specify that these records shall be in permanent form and shall be retained on the licensed premises for the period specified. Records must be available for inspection by BATF officers during business hours. Within 30 days after discontinuance of business, the records shall be delivered to the ATF OUT-OF-BUSINESS RECORDS CENTER, 2030 STONEWALL JACKSON DR., FALLING WATERS, WV 25419 or any BATF Regional Office.

| Date | Disposition Name | Disposition Address | Serial Number | Mfr Model | | |
|---|---|---|---|---|---|---|
| 10/24/65 | Bruce Arthur Durante | | DE 755 330 C | DA VCC 866 | 207 | 95 |
| 11/10/65 | William Thomas Dreshner | | DE 755 KD | | | |
| 10/23/55 | Eugene Foxwell | | | DA 638 DL | | |
| 10/11/45 | William Paul Derby | | DE 379 LP | DA 62 966 | — | |
| 11/21/55 | Eugene Dino Shackson | | DE 379 44 | DA 63/13 | 23 c | |
| 10/2/45 | Robert Lee Richardson | | | DA 64178 | 270 | |
| 1/30/6; | Scott Stephen Meiwell | | DE 351 309 | DA 62 945 | — | |
| 10/27/45 | Johathur Derrick Battle | | DE 4161 | DA VCC 7842 | 208 | 95 |
| 1/20/96 | Marc Steve Wiles | | DE 2384m | DA | 513 | 66 |
| 3/6/65 | Robert Andrew Vaughn Sr | | | DA — | 234 | 49 |
| 7/18/96 | Robert Dale Gardner | | | DA — | — | |
| 11/30/96 | Charles F Adams Jr | | | DA VCC 860 | 379 | 51 |
| 3/6/65 | Robert Michae Reppert | | | DA VCC 356 | 379 | 51 |
| 2/25/55 | Ronald I Martin | | DE 4177 | DA 6 358 | 375 | 51 |
| 5/97 | Samuel Elwood Simmers | | DE 1158087 | DA 978 1815 | | |

# FIREARMS ACQUISITION AND

| Manufacturer and/or Importer | Description/Model | Serial Number | Type/Action | Caliber or Gauge | Date | Receipt From Whom Received (Name and Address or Name and License Number) |
|---|---|---|---|---|---|---|
| Remington | 870 | B33447 0M | Pump | 12 ga | 3/1/ | RSR North 21 Trolley Circle Rochester, NY 14606 |
| Browning | BPS shotgun | 11457 NV752 | Pump | 12 ga | 3/1/ | RSR North 21 Trolley Circle Rochester, NY 14606 |
| Mitchell | GS 45 | 005793 | Semi | .45 | 3/1/ | RSR North 21 Trolley Circle Rochester, NY 14606 |
| S&W | 4006 | 7207 3 | Semi | .40 | 3/1/ | RSR North 21 Trolley Circle Rochester, NY 14606 |
| Browning | Light Mag Cyn | B254 FYKS53 | Semi | .40 | 8/1/ | RSR North 21 Trolley Circle Rochester, NY 14606 |
| Remington | 870 | 6788 120M | Pump | 12 | 8/1/ | RSR North 21 Trolley Circle Rochester, NY 14606 |
| S&W | 3914 | DSS 2NV773 | Semi | 9mm | 8/1/ | RSR North 21 Trolley Circle Rochester, NY 14606 |
| Browning | Citori | AN 06 753 | Semi | 20 ga | 8/1/ | RSR North 21 Trolley Circle Rochester, NY 14606 |
| Imez | | 15786 | Semi | 9 A | 8/1/ | 23 - 10531 7 |
| Colt | Target | 7M 02198 | Semi | .22LR | | 23 - 10531 7 |
| EAA Astra | A100 | 1586 D | Semi | .45 | 8/30/95 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| Mitchell | GS 45 | PC 441 2M | Semi | .45 | 8/30/95 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| Remington | 5695 | 24068 | Semi | 308 | 8/30/95 | James L Cheeseman / Owners Personal / Collection 13357 |
| Remington Mfg | | | | | | |

4B

# DISPOSITION RECORD

27 CFR Sections 178.121 and 178.127 specify that dealer records shall be in permanent form and shall be retained on the licensed premises until discontinuance of business. Records kept by ATF officers during business hours. Within 30 days after discontinuance of business, the records shall be sent to the ATF OUT-OF-BUSINESS RECORDS CENTER, 2020 STONEWALL JACKSON DR., FALLING WATERS, WV 25419 or any BATF Regional Office.

| DATE | DISPOSITION NAME | ADDRESS | FIREARMS NUMBER | | |
|---|---|---|---|---|---|
| 11/4/95 | Paul Leisure DeSoulaires | PA 6352S | 265 | 74 | |
| 8-30-95 | Elliot Bros | | 450 | 1 | |
| 8/31/95 | Edward Seich | PA 60982 | 427 | 55 | |
| 7/2/95 | McIlree Patrick | | 394 | 55 | |
| 10/4/95 | Chris | | | | |
| 9/1/95 | | | | | |
| 14/4/95 | | | 4475 | 180 | 52 |
| 8/30/95 | | | | | |
| 9/31/95 | Jammie D Smith | | | 129 | 52 |
| 9/10/95 | William H | | 6940 | 1117 | 50 |
| James F Keeor | | | 102 | 307 | |
| Robert N Schulz | | | 61248 | 180 | 52 |
| Donald Edward | | LCCS | | 185 | 90 |
| 10/2/95 | Stephen Mark Serddu | DA 6642 | 291 | 95 |
| 8/31/95 | Mitchell Arms Inc | Santa Ana 92705 | 927 V | 255 | 95 |
| 8/30 | Louis Ferd | OA 60971 | 427 | 95 |
| 8/30 | CHas Joel Congeau | OA 60935 | | |

Page ___14___ SA

# FIREARMS ACQUISITION AND RECEIPT

| Trans-action # (optional) | MANUFACTURER AND/OR IMPORTER | DESCRIPTION OF FIREARM | | | | DATE | FROM WHOM RECEIVED (Name and Address or Name and License Number) | New Use (optional) |
|---|---|---|---|---|---|---|---|---|
| | | MODEL | SERIAL NUMBER | TYPE OF ACTION | CALIBER OR GAUGE | | | |
| | Colt | 1903 | 24403r | semi | 32acp | 7/22/97 | GUNS & 7.7.1053 FFL 23-15560 | Guns SA |
| ✳ | RUGER | MINI-14 | 182-52031 | SDM1 | .223 | 7/23/97 | JAMES L CHEESEMAN 6 WHITEOAK DRIVE MIDDLETOWN DE. 19709 | |
| | NDBinco | M14 | CO-7972 | semi | 308 | 7/24/97 | THOMAS PETER JACOB 301 WHITEOAK RD NEWARK DE 15702 NATIONWIDE | ✓ |
| | RADFORD | 14 | RH 17871 | semi | 45 | 7/24/97 | FFL 88-33507 NATIONWIDE | ✓ |
| | RADFORD | 14 | RH7872 | semi | 45 | 7/24/97 | FFL 88-33507 | ✓ |
| | Glock | 30 | CFL907us | semi | 45 | 7/24/97 | FFL 88-33507 INTERSTATE ARMS CORP | ✓ |
| | Browning (Practical Hi Power) | | 2 45 NV 70353 | semi | 9mm | 7/24/97 | JEREMIE D SMITH 501 W BRECHSHIRE Ct WILM DE 15805 | ✓ |
| | Ruger | 22/45 | 220-74384 | semi | 22 | 7/8/97 | MEDIUM P DOWNING JR 24 BEACON LN PC W CASTLE DE 15720 | ✓ |
| | Star M45 FIRESTAR | | 2-77048 | semi | 45acp | 7/24/97 | KIRK L SIMPSON 841 Sumatic Cr BEAR DE 19701 | ✓ |
| | SAKO | varmint | A859 | bolt | 6mm PPC | 7/24/97 | | ✓ |
| | Ruger Black Hawk | | 4783414 | Revolver | 41mag | 7/25/97 | ABN FFL 34175 73 | ✓ |
| | Ruger Black Hawk S737127 | | 0266-37446 | Revolver | 38mag | 7/25/97 | | ✓ |
| | Ruger KPS12 22-45 | | 220-95202 | semi | 22 | 7/25/97 | | ✓ |

# DISPOSITION RECORD

SB

| DATE | NAME (DISPOSITION) | ADDRESS OR LICENSE NUMBER (If Licensee) FORM 4473 SERIAL NUMBER IF FORMS 4473 ARE FILED NUMERICALLY | Cost (optional) | Amount Received (Sales Tax) (optional) | Inventory Number (optional) |
|------|--------------------|-----|-----|-----|-----|
| 7/22/57 | Timothy Daniel Kostas | 1/1/57  DE 117229  4473  8/4/57  DA 570 5726 | | | |
| 5/30/57 | James Frederick Haush | 10/1/57  DA 336  9/30  27C  4473  8/9/57  DM NCC 886 | | | |
| 5/5/98 | James Lee Levinure | 9/5/57  DE 6533322  6/18/58  DA 570 3550 | 6.75 | | |
| 1/14/57 | Christopher Kevin Cox | 8/9/57  DE 311270  4473  4/21/57  DA 570 6706 | 4 X 8  02 | | |
| 9/20/97 | Mark Edward Cavagacchioli | 9/4/56  DE 1140420  4473  10/98/57  DA 570 7970 | 4 55  02 | | |
| 7/29/57 | Harry Stanley Hughes Jr | 9/29/57  DE 722  4473  7/29/57  DA 570  6-2 73 | 529 85 | | |
| 7/16/57 | Thomas Barry Devlin | 8/6/57  9070665  DE  4473  5/6/57  DA 570 6567 | 335 | | |
| 1/24/57 | Michael Lo Presti | 4/30/57  DE 637657  4473  10/10/57  DA 570 5832 | 105 | | |
| 1/3/57 | David Brian Acevedo | 1/5/57  DE 114369  4473  10/10/57  DA 570 7850 | 120 | | |
| 8/7/57 | Alan Boyd Price Jr | 7/1/57  MD Pegon000  4473  8/11/57  DA 570 5486 | 400 00 | | |
| 3/19/49 | Donald Mark Hefflefinger | 1/7/49  DE 744073  3/62/55  PA 800 2097 | 257 49 | | |
| 1/11/57 | Wayne Austin Loveless | 4/30/97  DE 633652  4473  11/18/57  DA 6208012  Doug Dos | 257 49 | | |
| 7/8/57 | ABSN Sports | 110 Dairl Pkwy  Moresire, OH 44103 | 220 84 | | |

27 CFR Sections 178.121 and 178.127 specify that dealer records shall be in permanent form and shall be retained on the licensed premises until discontinuance of business. Records must be available for inspection by BATF officers during business hours. With 30 days after discontinuance of business, the records shall be sent to the ATF OUT-OF-BUSINESS RECORDS CENTER, 2029 STONEWALL DR., FALLING WATERS, WV 25419 or any BATF Regional Office.

Page ___ 18 ___    6A

# FIREARMS ACQUISITION AND RECEIPT

| Trans Action # (optional) | MANUFACTURER AND/OR IMPORTER | MODEL | SERIAL NUMBER | TYPE OF ACTION | CALIBER OR GAUGE | DATE | FROM WHOM RECEIVED (Name and Address or Name and License Number) | New/Used (option) |
|---|---|---|---|---|---|---|---|---|
| | S&W | 59 | A264492 | Semi | 9mm | 11/14/97 | GSA Sport Supply | used |
| | AMT | Back up | A55186 | Semi | 380 | 11/14/97 | | used |
| | Star | Firestar | 2091384 | Semi | 9mm | 11/14/97 | | used |
| | Colt | Mustang | ML0726S | Semi | 380 | 11/14/97 | | used |
| | Taurus | 66 | PD380702 | Semi | 357 mag | 11/14/97 | | used |
| | Colt | Agent | 19619 | Revolver | 38 spl | 11/14/97 | Luke A Martelli PTS Gerault Rd Cc Clayton DE 19938 | used |
| ✳ | Remington | XP100 | B3518040 | Bolt | 7mm BR | 11/14/97 | James L Clossom Clayton DE 19734 | used |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | Rossi | 971 | E28/622 | Revolver | 357 | 11/7/97 | EAGLE POINT GUN 167 FREVELD AVE GIBBSTNW NJ 08027 | True |
| | Rossi | 971 | E28/631 | Revolver | 357 | 11/7/97 | GEORGE BIRSNA & JM 451 NEW LONDON RD NEW YORK DE 19711 | |
| | Colt | 1C Sharpshooter police post | 217063 | Revolver | 32-20 | 11/7/97 | APH 34 17623 | |
| | Para Ord | | ST2233 | Semi | 45 Sav | 11/7/97 | | |

GB

## DISPOSITION RECORD

27 CFR Sections 178.121 and 178.127 specify that dealer records shall be in permanent form and shall be retained on the licensed premises until discontinuance of business. Records must be available for inspection by ATF officers during business hours within 30 days after discontinuance of business, the records shall be sent to the ATF OUT-OF-BUSINESS RECORDS CENTER, 2023 STONEWALL JACKSON DR., FALLING WATERS, WV 25419 or any BATF Regional Office.

| DATE | DISPOSITION NAME | ADDRESS OR LICENSE NUMBER (if Licensee) OR FORM 4473 SERIAL NUMBER (IF FORMS 4473 ARE FILED NUMERICALLY) | | | Cost (optional) | Amount Received (Before tax) (optional) | Inventory Number (optional) |
|---|---|---|---|---|---|---|---|
| 3/48 | Jerome Darrell Easter Sr. | 3/51 | DE 126323 (473) | 10/10/47 DA 980 6535 | | | |
| 1/28/48 | MATTHEW Scott Miller | 6/51 | DE 1074954 (473) | 5/10/47 by DA 970 3595 | | | |
| 22/48 | Bessy Ann Slayman | 4/51 | DE 1022765 (473) | 11/26/47 DA 9800 672 | | | |
| 63/48 | Kevin Charles Rolph | 1/51 | DE 873502 (473) | 4/25/68 DA NCc 1103 | | | |
| 11/68 | Matthew Joseph Sandoval | 10/51 | DE 644905 (473) | 11/65/68 DA 970 042.7 | | | |
| 12/2/67 | Patrick Michael Cronin | 10/60 | DE 873261 (473) | 4/1/52 2.1m CLUBGS DA 970 8989 | 180 00 | | |
| 1/14/97 | James Gillas Funston | 10/51 | DE 846862 11/29/97 DA 970 8730 | | | | | l |
| 19/97 | James Phillip Ellis | 5/53 | DE 1105291 4477 | | | | |
| 12/9/47 | Linda Marie Saxton | 8/52 | DE 078394 4477 | 11/28/97 DA 9708994 | | | |
| 6/96 | Billy Joe Mace | 9/47 | DE 756840 4473 | 4/16/96 DA 980 25 46 | 647 55 | | |
| 20/48 | Robert Lee Goss | 5/28 | DE 642260 4473 | 5/10/18 DA 9803606 | 200 | | |

Page __12__    74

# FIREARMS ACQUISITION AND RECEIPT

| Trans-action # (optional) | MANUFACTURER AND/OR IMPORTER | MODEL | SERIAL NUMBER | TYPE | CALIBER OR GAUGE | DATE | NAME AND ADDRESS OR NAME AND LICENSE NUMBER | New/Used (optional) |
|---|---|---|---|---|---|---|---|---|
| | S&W | m637 Airweight 637 | CEL0009 | Revolver | 357mag | 12/8/00 | RSR 2170 Reiley ave Rochester NY | |
| | American West Peacemaker | Pr736 | | Revolver | 45LC | 12/8/00 | RSR 4405 Metric Dr Winterpark FL | |
| | Schmidt Rubin | K31 | 750693 | Rifle | 7.5swiss | 12/8/00 | FGS 17th st Portsmouth OH 45662 | Trem's |
| | Colt | MK IV | | Revolver | 22 | 12/9/00 | Classen M Hulbeck 436 south 74th st Dysart PA 15363 | |
| | Colt | Trooper 357 | 54195339 | Revolver | 22 | 12/9/00 | Classen M Hulbeck 436 south 74th st Dysart PA 15363 Cox road PA 15363 | |
| | S&W | 5 screw | 360949 | Revolver | 22 | 12/9/00 | | USED |
| | Colt | Officer match 38 | 934012 | Revolver | 38 | 12/9/00 | | |
| | Colt | Diamond Back | S61502 | Revolver | 22 | 12/9/00 | | |
| | Colt | 22-Semi Auto | | Pistol | 22 | 12/9/00 | | ✓ |
| | S&W | Rosewood mtn | 7029 | Revolver | 44 | 12/9/00 | | |
| | Colt | Trooper MK II | AES 17/2 | Revolver | 22 | 12/9/00 | | |
| | Winchester | 1897 | 568192 | Shotgun | 12gph | 12/9/00 | James L Cheeseman Middletown PA 19702 | |

® RK ENTERPRISES • SANTA BARBARA, CA • (805) 687-1416

"TYPE" refers to Pistol, Revolver, Rifle, Shotgun, etc.

73

# DISPOSITION RECORD

27 CFR Sections 178.121 and 178.127 specify that dealer records shall be in permanent form and retained on the licensed premises for 20 years after last disposition. Records must be available for inspection by BATF officers during business hours. Within 30 days after discontinuance of business, the records shall be sent to the ATF OUT-OF-BUSINESS RECORDS CENTER, 2029 STONEWALL JACKSON DR., FALLING WATERS, WV 25419 or any BATF Regional Office.

| DATE | DISPOSITION NAME | ADDRESS OR LICENSE NUMBER IF LICENSEE OR FORM 4473 SERIAL NUMBER IF FORMS 4473 FILED NUMERICALLY | Cost (optional) | Amount Received (Before Tax) (optional) | Inventory Number (optional) |
|---|---|---|---|---|---|
| 12/30/00 | Ronald Wynn Davies | 7/3/ 1103578  12/1/58/ DE MC1308  678 | 59 | | |
| 3/12/01 | Alfred Joseph Matejuski | 4/8/ 851525  3/58/01  0840-D22  5334 | 44 | | |
| 12/8/00 | Robert Michael Thomas | 3/1/ 743974  12/8/00  0789-6DJ  Dpcos 8151 | | | |
| 12/29/00 | Thomas Linwood Twilley | 3/4/ 708334  12/28/00  DB OLD 9114  225 | | | |
| 12/22/00 | Richard Lee Ackerman  Roy G Culpepper  Guns Plus | 4/1/ 1132389867  DE 2/12/01  MCC 776  250 | | | |
| 12/27/00 | Fun Fair n More Inc | FFL 61-576/11  275 | | | |
| 3/8/01 | Beeleys Trading Post | FFL 64-34683  07-KI-JXZ  225 | | | |
| 12/23/00 | Robert Charles Rumble | 5/1/ 560101  DE 13/136/00  07-K1-JXZ  250 | | | |
| 3/27/01 | Richard Lee Ackerman | 1/8/ 589867  DE 3/136/01  DAACC 776  250 | | | |
| 12/6/00 | William Edward Taylor JR | 7/1/ 643856  DE 12/4/00  078W-6KF  DA— | | | |

Page ___ 51   8A

# FIREARMS

## ACQUISITION AND

| Trans. action # (optional) | MANUFACTURER AND/OR IMPORTER | MODEL | SERIAL NUMBER | TYPE | CALIBER OR GAUGE | DATE | RECEIPT NAME AND ADDRESS OR NAME AND LICENSE NUMBER | (optional) |
|---|---|---|---|---|---|---|---|---|
| | Ruger | MK II | 21884467 | semi | 22 | 3/20/98 | FFL Elliott Davis 57 35240 | |
| | Ruger | MK II | 21841572 | semi | 22 | 3/20/98 | Elliott Davis | |
| | Walther | PPK | A086165 | semi | 380 | 3/20/98 | | |
| | Beretta | Tomcat DAA | 176253 | semi | 32 | 3/20/98 | | |
| | SKS | Sigma PRC 9003 | | semi | 9mm | 3/20/98 | Gregor W Cloud 637 ... Ave with DE 15607 | |
| ☆ | Grand | m1 | 394914 | semi | 308 | 3/20/98 | James L Chesson D Elliott Oak Dr #104 Middletown DE owner relocation collection | |
| ☆ | PolyTech | AK47S | DW208799 | semi | 7.62x39 receiver only | 3/20/98 | James L Chesson D 104 Elliott Oak Dr Middletown DE 19701 owner relocation collection | |
| ☆ | RGM Inc | Marksman | USMC49 | semi D | 45 receiver only | 3/21/98 | L Lewis Jr 14 ... Abner C Rd Abner Haven DE 19701 | |
| | Remington/Rand 1911 | | 8021162 | semi | 45 | 3/14/98 | S.P. Rossi ... 147 Ranning Gurs Brook Haven PA 19015 - 1939 | |
| | RGM | Marksman USMC47 | | semi only | received only | 3/14/98 | ... Rossi ... Brook Haven PA 19015 - 1939 | |
| | Underwood | USM1 | 6146869 | semi | 30 carbine | 3/14/98 | Elmer Arms & Repair 35 Willow Grove Rd Pittsgrove NJ 08318 | |
| | Browning | Hi Power | 6162 | semi | 9mm | 3/14/98 | Paul Eichenberg | |
| | IMI/IMI | Mod A | SA 36245 | semi | 9mm | 3/14/98 | Paul Eichenberg FFL 23 13624 | |
| | Cobray | M11 | 84006671 | semi | 9mm | 3/23/98 | Joseph L Globbe 12 Mortunic Globbe New Ark DE 15713 | |

8B

# DISPOSITION RECORD

27 CFR Sections 178.121 and 178.127 specify that dealer records shall be in permanent form and shall be retained on the licensed premises until discontinuance of business. Records must be available for inspection by BATF officers during business hours. Within 30 days after discontinuance of business, the records shall be sent to the ATF OUT-OF-BUSINESS RECORDS CENTER, 2929 STONEWALL JACKSON DR., FALLING WATERS, WV 25419 or any BATF Regional Office

| DATE | DISPOSITION NAME | ADDRESS OR LICENSE NUMBER IF LICENSEE OR FORM 4473 SERIAL NUMBER (IF FORMS 4473 FILED NUMERICALLY) | | Cost (optional) | Amount Received (Before Tax) (optional) | Inventory Number (optional) |
|------|------|------|------|------|------|------|
| 4/2/98 | Robert Bryan Snead | 9/7 | DE 10481944 4/17/98 DA 980 2470 4/73 | 262 | 80 | |
| 3/21/98 | Thomas Wayne Godwin Jr | 7/68 | DE 940867 3/25/98 DA 2151 Lion Club GS | 292 | 80 | |
| 3/11/00 | Henry Guthrie Leever Dupont | 2nd 10/28 | DE 963448 2/25/00 DP 0000 G25 64HHF-7777 | 355 | 51 | |
| 12/30/04 | Alan Terry Fevia | 5/6 | DE 854452 12/10/04 DP icc 133 4/73 | 238 | 21 | |
| 3/31/98 | James C Walker | 6/13 | DE 949232 3/22/98 DP 980 2158 Lion Club GS | 200 | | |
| 3/31/98 | Edward Clarence Curie | 3/7 | DE 840815 4/23 2/01/98 970 2158 Lion Club GS | | | |
| 4/20/98 | Anthony Thomas Salvatti Jr | 3/7 85 | DE 6510N7 3/30/98 DP 980 2082 Lion Club GS | | | |
| 4/20/98 | James L Chessgrove | | OWNERS PERSONAL COLLECTION 4/73 3/30/98 DP icc 133 | | | |
| 3/24/98 | David Vincent Robinson | 3/1 57 | DE 790724 3/12/98 DP icc 1079 4/73 | | | |
| 3/24/98 | Thomas Mitchell Quek | 2/93 | DE 1117970 3/30/98 DA 980 2241 4/73 | | | |
| 3/31/98 | Stephen Chaplow Bentley | 3/16 MD 4000777 115 934 | 4/73 9/89/98 DP 980 546 G | | | |
| 10/6/99 | Victor Richard Fearal | 4/56 | DE 742221 10/5/98 DA 980 6637 | 275 | | |
| 3/30/98 | George Alfred Gibson Jr | 9/6/00 | DE 241008 3/15/98 DA 980 2398 4/73 | 200 | | |
| 4/17/98 | Keith Lee Harmon | 3/20/97 | DE 1135535 4/53/98 DA 980 2779 (4/73) | 175 | | |

Page ___36___ CA

# FIREARMS

## ACQUISITION AND RECEIPT

| Trans-action # (optional) | MANUFACTURER AND/OR IMPORTER | DESCRIPTION OF FIREARM | | | | | NAME AND ADDRESS OR NAME AND LICENSE NUMBER | New (opt |
|---|---|---|---|---|---|---|---|---|
| | | MODEL | SERIAL NUMBER | TYPE | CALIBER OR GAUGE | DATE | | |
| | German | P08 | 1500 | Semi | 9m | 4/4/98 | Harry S Hughes 3024 Magls Shade Wilmington DE 19810 | |
| | Ruger Gov't Target | MK II | 21755028 | semi | 22 | 4/4/98 | Robert E Loss/Stenholme 2110 Peachtree DR Wilm DE 19805 | |
| | Remington | 11-87 | Pd364039 | semi | 12ga | 4/4/98 | Frank S Zander Jr 17 325741 Knoll Rd Newark DE 19711 | |
| | Remington | 870 | AL428283V | pump | 20ga | 4/4/98 | | |
| | Marlin | 982 | 086 05 448 | Bolt K | 22 wmr | 4/4/98 | De pocke... Northeast MD | |
| | Ruger | MK II | 221 29883 | Semi | 22 | 4/6/98 | James F Record 31 Dempsey Dr Newark DE 1971-5 | |
| | Keltec | P11 | 47211 | Semi | 9mm | 4/7/98 | Robert A Culp PO Box 310 969 Cincinnati OH 45270 07 69 | |
| | Keltec | P11 | 46788 | Semi | 9mm | 4/7/98 | | |
| | HKI | USP 45 | 29 003713 | Semi | 45 | 4/7/98 | | |
| | Poly Tech | AK762 | CE10658 | Semi | 762x39 | 4/8/98 | James A Cheeseman Cuthill Dr Middletown DE 19711 | |
| | S&W | SW40V | RAY8644 | Semi | 40 S&W | 4/8/98 | A Mico Shabazz 1122 Lom Bard St Wilm DE 19801 | |
| | S&W | 10 | C850821 | Revolver | 38 spl | 5/8/98 | Wes Bucknah 1133 Sycamore Ave Wilm DE 19805 | |

9B

# DISPOSITION RECORD

27 CFR Sections 178.121 and 178.127 specify that dealer records shall be in permanent form and shall be retained on the licensed premises until discontinuance of business. Records must be available for inspection by BATF officers during business hours. Within 30 days after discontinuance of business, the records shall be sent to the ATF OUT-OF-BUSINESS RECORDS CENTER, 2929 STONEWALL JACKSON DR., FALLING WATERS, WV 25419 or any BATF Regional Office.

| DATE | DISPOSITION NAME | | ADDRESS OR LICENSE NUMBER (IF LICENSEE) OR FORM 4473 SERIAL NUMBER, IF FORMS 4473 FILED NUMERICALLY) | Cost (optional) | Amount Received (Before Tax) (optional) | Inventory Number (optional) |
|---|---|---|---|---|---|---|
| 5/3/98 | Jeffrey Stephen Miller | 6/28/98 DE 1180 405 | 8/3/98 DA 500 4581 (4473) | | | |
| 1-9-99 | Keith Allen Conrad | 7/10/96 DE 855 414 | 1-24-99 DA NC279 (4473) | 1.50 | | |
| 9/30/98 | Robert William Rafee | 10/6/93 RICO 745 887 700 | 9/26/98 DA — LION CUBES (4473) | | 600 each 2 | |
| 11/20/98 | Robert Pittilla Hart | 1/8/93 DE 526565 | 11/20/98 DA — (4473) | | | |
| 4/6/98 | Ralph Clifford Mullett | 6/6/98 DE 301 861 | 4/15/98 DA 980 25 43 (4473) | | | |
| 4/18/98 | James Fletcher Records | 2/4/94 DE 249 255 | 4/27/98 DA 980 2282 (4473) | 2.50 | | |
| 5/5/98 | Ronald William Witt | 2/27/89 DE 225 960 | 5/12/98 DA NCC # 663 (4473) | 2.56 | 60 | |
| 5/22/98 | George William Sutre | 11/2/93 DE 562091 | 5/24/98 DA NCC 1149 (4473) | 1.88 | 50 | |
| 4/10/98 | Christopher Thomas Campbell | 3/4/92 DE 630518 | 4/27/98 DA 980 2623 (4473) | 5-6-3 | 50 | |
| 4/11/98 | George Alfred Babson | 8/4/94 DE 240008 | 4/52/98 DA 580 2443 (4473) | 2.50 | | |
| 4/11/98 | Stephen Paul French | 8/4/90 DE 303 724 | 4/13/98 DA K 381 (4473) | 2.50 | | |
| 5/3/98 | Joseph William Bailey | 5/4/93 DE 432 850 | 5/10/98 DA 980 3322 (4473) | 1.50 | | |

# FIREARMS ACQUISITION AND RECEIPT

| Trans action # (optional) | MANUFACTURER AND/OR IMPORTER | DESCRIPTION OF FIREARM | | | | DATE | FROM WHOM RECEIVED (Name and Address) or Name and License Number | New/Us (option) |
|---|---|---|---|---|---|---|---|---|
| | | MODEL | SERIAL NUMBER | TYPE OF ACTION | CALIBER OR GAUGE | | | |
| | Enfield | Jungle Carbine No5 | V15247 | Bolt | 303 | 7/26/96 | Navy Arms Co 689 Bergen Blvd Ridgefield NJ 07657 | Used |
| | (Chinese) Norinco | SKS | 111713041 | Semi | 762x39 | 7/26/96 | Paul E Smith 112 Signature Dr Newark DE 19713 | |
| | S&W | ASDL | 7EN7054 | Semi | 45 Acp | 7/26/96 | Sue Hyde 275 W Roosevelt Ave New Castle DE | New |
| | Ruger | KP950 | 31123311 | Semi | 9mm | 7/29/96 | FFL 34-17533 | New |
| | S&W | 10 | D891411 | Revolver | 38 | 7/29/96 | Anthony J Polietta 2357 Nike Goat Gap Pike Wilmington DE 19808 | New |
| | Hawes | Western Marshall | 47521 | Revolver | 44 | 7/30/96 | Ted Derrick Jr Scorstown Rd Wellsboro PA 19720 | New |
| | Colt | Govt MkIV | RS47661 MkIV | Semi | 380 | 7/31/96 | | New |
| | Keltec | P11 | 14607 | Semi | 9mm | 7/31/96 | | New |
| | Winchester | 94 | 6247565 | Lever | 45LC | 7/31/96 | | New |
| | Springfield | 1911A1 | 305540 NM | Semi | 45 | 7/31/96 | James Kramer 20 Oak View Dr | New |
| | Mitchell (MM) | 1911A1 | MM91619 | Semi | 45 | 7/31/96 | James L Carpenter DE 1620 L Wilmington DE 14705 | New |
| | Thompson Cent | Contender | 1440103 | Single Shot | 35 Rem | 8/1/96 | William D Wilmington DE 14705 | New |
| | Ruger | Mini 14 | 18275040 | Semi | 223 | 8/1/96 | Derek Reynolds FFL 98-33507 | New |
| | Ruger | KP91 | 31123264 | Semi | 45 | 8/29/96 | Derek Reynolds Wilmington DE 19311 | Used |
| | Remington | 870 | A547115U | Pump | 20ga | 8/29/96 | Louis Bezzetti Jr FFL 34-17673 | Used |

# DISPOSITION RECORD

10 B

27 CFR Sections 178.121 and 178.127 specify that dealer records shall be in permanent form and shall be retained on the licensed premises until discontinuance of business. Records must be available for inspection by BATF officers during business hours. Within 30 days after discontinuance of business, the records shall be sent to the ATF OUT-OF-BUSINESS RECORDS CENTER, 2929 STONEWALL JACKSON DR., FALLING WATERS, WV 25419 or any BATF Regional Office

| DATE | DISPOSITION NAME | ADDRESS OR LICENSE NUMBER (If Licensee) OR FORM 4473 SERIAL NUMBER IF FORMS 4473 ARE FILED NUMERICALLY | | | Cost (optional) | Amount Received (Before Tax) (optional) | Inventory Number (optional) |
|---|---|---|---|---|---|---|---|
| 7/26/96 | JAMES EDWARD WOOLBAUGH | DC 604 472 | 7/27/96 (473) | DA 760 585 | 177 | 5 | |
| 8/12/96 | KEITH H HOWARD LONG | DC 1090401 | 8/24/96 (473) | DA 960 6264 | | | |
| 4/8/96 | ALLEN GUSTAV NELSON JR | DC 0518840 | 4/4/96 (473) | WON C11063 | 300 | | |
| 7/30/96 | RAYMOND EVANS WATKINS JR | DC 592287 | 7/85/96 (473) | DA 760 5729 | 463 | 45 | |
| 9/2/96 | ROBERT CLYDE ROATH | DC 108 663 | 4/29/96 (473) | DA 960 819 | 333 | 25 | |
| 8/30/96 | LEOPOLD JAMES WILLIAMS | DC 850762 | 9/01/96 (473) | DA 960 7366 | 117 | — | |
| 11/2/98 | VICKIE LYNN PRICKETT | DC 98577 | 11/26/94 (473) | DA NNC 727 | 200 | — | |
| 9/14/96 | JAMES CHRISTOPHER OGONOWSKI | DC 630744 | 5/16/96 (473) | DA 960 6245 | 194 | 95 | |
| 7/6/98 | EUGENE SCHWELLER RODRIGUEZ | DC 1108 832 | 7/22/98 (473) | DA 990 4401 | 175 | — | |
| 7/31/96 | JAMES FRANCIS KIEMENCROL | DC 1060662 | 7/86/96 (473) | DA 80355U | | | |
| 8/1/96 | DALE LEWIS BOULDEN | DC 763226 | 8/11/96 (473) | DA 960 5959 | 549 | 90 | |
| 9/14/96 | KEVIN WAYNE SMITH | DC 967797 | 9/68/96 | DA 960 906 | 200 | — | |
| 7/18/96 | ALBERT M STELL SR | DC 090267 | 8/5/96 (473) | DA 960579N LIM C11063 | 463 | 95 | |
| 4/20/96 | KELLEY ARLENE TAYLOR | DE 249844 | 11/14/96 | DA 960 5744 | 125 | 00 | |

Printed in USA

Page 15

# FIREARMS

### ACQUISITION AND

| # | MANUFACTURER AND/OR IMPORTER | MODEL | SERIAL NUMBER | TYPE OF ACTION | CALIBER OR GAUGE | DATE | FROM WHOM RECEIVED (Name and address or Name and license Number) |
|---|---|---|---|---|---|---|---|
| | | | DESCRIPTION OF FIREARM | | | | RECEIPT |
| | Ruger | P 89 | 30939 598 | Semi Auto | 9 m | 12/23/94 | Ashland Shooting Supplies 110 Baird Pkwy Mansfield, OH 44903 |
| | Ruger | Vaquero 55 | 26179 | Revolver | 45 | 12/23/94 | Ciampoli's Gun Shop RT 5 Box 507 New Castle Pa. 16105 |
| | Reminton | 870 | B188156M | Pump | 12 GA | 12/23/94 | Edward S Stanley 835 Sparrow Ln Bear DE 19701 |
| | Mossbers | 500 | Arc 60 P05FR | Pump | 20 GA | 12/23/94 | Edward S Stanley 835 Sparrow Ln Bear DE 19701 |
| | SigSauer | P 230 | SO 48329 | Semi Auto | 380 ACP | 12/23/94 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Smith Wesson | Sigma | PAE 8232 | Semi Auto | 40 SW | 12/23/94 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Ruger | P90 | 660 61193 | Semi Auto | 45 | 12/23/94 | William F Divins 27 Perpen cat F Newark DE 19702 |
| | Smith Wesson | 659 | TAR 8714 | Semi Auto | 9 m | 12/23/94 | James F Records 35 Dempsey Dr Newark DE 19713 |
| ✱ | Para Ordnance | P 12 | RJ 4691 | Semi Auto | 45 | 12/24/94 | Jamel Cheesborne 1801 N Oak Dr Middletown DE 19709 |
| | Sig... | 6406 | VAV 3828 | Semi Auto | 9 m | 12/27/94 | Victoria Lynn Jones 317 Manubay Ct Bear DE 19701 |
| | Colt | .22 | PH 14792 | Semi Auto | 22 LR | 12/27/94 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Glock | 21 | AYG 92305 | Semi Auto | 45 | 12/27/94 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Marlin | m 9 Camp Carbine | 0653 8119 | Semi Auto | 9 m | 12/27/94 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Phoenix | HP 22 | 4032121 | Semi Auto | 22 LR | 12/27/94 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | Phoenix | HP 22 | 4032767 | Semi Auto | 22 LR | 12/27/94 | RSR North 21 Trolley Circle Rochester, NY 14606 |
| | EAA | Witness | AE 48945 | Semi Auto | 9 m | 12/28/94 | Camfour ILL 65 Westfield Ind Park Road Westfield MA 01085-1693 |
| | EAA Benelli | MP95E | 02152B | Semi Auto | 22 LR | 12/28/94 | Camfour Inc 65 Westfield Ind Park Road Westfield MA 01085-1693 |
| | Smith Wesson | Sigma | PAE 8232 | Semi Auto | 40 SW | 12/28/94 | Victoria Lynn Jones 317 Manubay Ct Bear DE 19701 |
| | Smith Wesson | 629 | CAD 0914 | Revolver | 44 MAG | 12/29/94 | Camfour #FNC 65 Westfield Ind. Park Rd Westfield MA 01085-1693 |
| | Rossi | 88 | W 334553 | Revolver | 38 | 12/29/94 | Sile Dist. ILL 998 N Colony Rd Meriden CT 06450 |

11B

**DISPOSITION RECORD**

licensed premises until discontinuance of business. Within 30 days after discontinuance of business, the records shall be delivered to the Regional Regulatory Administrator for the region in which the business was operated. Records must be available for inspection by ATF officers at all reasonable times.

## DISPOSITION

| DATE | NAME | ADDRESS OR LICENSE NUMBER (If Licensee) OR FORM 4473 SERIAL NO. (If Non-Licensee) [File Numerically] |
|---|---|---|
| 1/13/95 | LOUIS EDWARD LYMS | 4477 1/30/95    DA 53284 |
| 2/23/94 | JOYCE R IRWIN | 4477 12/87/94    DA 52411 |
| 4/94 | JESSE DEAN HANDLIN | 4473 1/6/95    DA 52910 |
| 1/22/95 | DENNIS C GULLIVAN | 4473 1/82/95    DA 53728 |
| 26-94 | Franklin R Robinson | 4473 12-94-94    DA 52547 |
| 1/27/94 | VICTORIA LYNN JONES | 4473 12/105/94    DA 52614 |
| 1/25/95 | JOHN E THOGERSEN | 4477 1/112/95    DA 53848 |
| 1/26/94 | JOHN R DAVIDSON | 4473 12/97/94    DA 52555 |
| 12/22/94 | VICKI LYNN PRICKET | 4477 12/78/94    DA NCC 727 |
| 1/26/95 | STEVEN L HUGHES | 4473 1/116/95    DA 53855 |
| 2/27/94 | EDWARD CLARENCE CURIE | 4477 12/101/94    DA 52612 |
| 1/7/95 | RICHARD LEE SMITH | 4477 1/14/95    DA 53047 |
| 3/2/95 | DENNY R COHENOUR | 4477 3/6/95    DA 55234 |
| 1/16/95 | SETH THOMAS YOUNG | 4473 1/46/95    DA 53407 |
| 1/14/95 | DAYLE LAWRENCE Reprecht | 4473 1/40/95    DA 53366 |
| 7/5/95 | LEONARD J WILLIAMS | 4473 4/65/95    DA 56603 |
| 1/28/94 | Boyce WAYNE Cook | 4473 12/110/94    DA 52662 |
| 1/31/95 | DAVID LAWRENCE FINNEY | 4473 1/133/95    DA NCC 933 |
| 2/5/96 | John MOULAN FISHER | 4477 LION C(08G) 11/5/96    DA 960 9432 |
| 1/1/95 | HENRY P MARRERO | 4473 1/2/95    DA 56471 |

Page ___ of ___

# FIREARMS ACQUISITION AND RECEIPT

© RK ENTERPRISES • SANTA BARBARA, CA • (805) 687-1416

| Trans-action # (optional) | MANUFACTURER AND/OR IMPORTER | MODEL | SERIAL NUMBER | TYPE | CALIBER OR GAUGE | DATE | NAME AND ADDRESS OR NAME AND LICENSE NUMBER | New/Used (optional) |
|---|---|---|---|---|---|---|---|---|
| | S&W | MI GUN VYONIE 627 | CEL0009 | Revolver | 357mg | 12/8/00 | RSR Bitner Inc Rochester NY | |
| | American West | Peacemaker Pr736 | 7506693 | Revolver | 45LC | 12/8/00 | RSR Metalic DC Wios Winter Park FL | |
| | Schmidt Rubin | K31 | 7506693 | Rifle | 7.55wiss | 12/8/00 | FGS JNS 3330 17th St Ports Mouth OH 45662 | Tonk |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | Colt | MK # | SW195539 | Revolver | 21 | 12/9/00 | Clarence M Fullbrook 36 South Yoke St DYEAND PA 9363 | |
| | S&W | 55 screw 38 2 | 3609 49 | Revolver | 38 | 12/9/00 | GEOrGe M Fullbrook 36 South Yoke St DYEAND PA 9363 OXFORD PA 9363 | USD |
| | Colt | Match 38 Officer | 934012 | Revolver | 38 | 12/9/00 | | |
| | Colt | Diamond Back | S61502 | Revolver | 22 | 12/9/00 | | |
| | Colt | 22-Semi Auto Aceswoodsman | 7029 | Pistol | 22 | 12/9/00 | | |
| | S&W | 29-3 | ACS 1712 | Revolver | 44 | 12/9/00 | | |
| | Colt | Trooper MK I | Y81394 | Revolver | 22 | 12/9/00 | James L Cheeseman Whitehorse Dr Middletown De 19709 | |
| | Winchester | 1897 | G 68132 | Shotgun | 12ga | 12/9/00 | James L Cheeseman Whitehorse Dr Middletown De 19709 | |

# EXHIBIT 4

WIL:124069.1/1-102017

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,    )
                               )

              Plaintiff,    )

        v.                    )  **Criminal Action No. 07-124-SLR**

                               )

JAMES L. CHEESEMAN,    )

                               )

             Defendant.    )

## <u>AFFIDAVIT</u>

STATE OF DELAWARE  )
                        ) SS.

NEW CASTLE COUNTY  )

       COMES NOW, Nancy Macknatt, having been sworn according to law deposes and says that:

       1)      I have reviewed my testimony as transcribed on page 83 of the transcript prepared in the above-captioned matter dated August 11, 2008;

       2)      Specifically, I have reviewed the following testimony appearing between lines 3 and 10 of said transcript:

"Q:  In whose name is the Federal Firearms License in now?

A:  It's in the business name, X-Ring Supply LLC.

Q:  And who owns that?

A:  My sister, Pam Rhoades, and I.

Q:  And is Jim Cheeseman any part of that operation at the present time?

A:  Yes.

       3)      The answer to the last question cited above is incorrect and should read: "No".

4)    James Cheeseman has no interest whatsoever either through ownership or operation of X-Ring Supply LLC.

5)    I believe my answer to that question when asked was "No" and that the error is one of transcription.

Date: _8/31/08_                         _Nancy Macknatt_
                                        NANCY MACKNATT

Sworn to and subscribed before me this 29th day of August, 2008.

                                        _____
                                        Notary Public

                            **M. DIANE QUIMBY**
                            **NOTARY PUBLIC**
                            **STATE OF DELAWARE**
                            My Commission Expires Nov. 24, 2008

- 2 -